DEPARTMENT OF REVENUE *vs.* G.W.A., THIRD.

Essex. October 7, 1991. - April 13, 1992.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Parent and Child*, Support of illegitimate child. *Paternity.*

In a paternity matter, a judge of the Probate Court did not abuse his dis-
cretion in declining to follow the child support guidelines issued by the
Chief Administrative Justice of the Trial Court, where he made a writ-
ten finding, in accordance with the guidelines, that to follow them
would be unfair and inappropriate, and where he considered all the rel-
evant facts as articulated in G. L. c. 209C, § 9 (*c*), in making the child
support determination. [439-441]

CIVIL ACTION commenced in the Essex Division of the
Probate and Family Court Department on December 7,
1988.

The case was heard by *Vincent F. Leahy*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Jon Laramore*, Assistant Attorney General, for the
plaintiff.

*Mary P. Harrington* for the defendant.

*Jacquelynne J. Bowman*, for Greater Boston Legal Ser-
vices, amicus curiae, submitted a brief.

*John P. Rupp, William T. O'Neil, Nancy Ebb & Diane
Dodson* of the District of Columbia, for Children's Defense
Fund & another, amici curiae, submitted a brief.

*Holli Ploog* of the District of Columbia, for National
Child Support Enforcement Association, amicus curiae, sub-
mitted a brief.

O'CONNOR, J. The complaint of the plaintiff (department
on behalf of the mother) requests an adjudication that the
defendant is the father of a child born out of wedlock and an

order for the child's support. In his answer to the complaint, the defendant admits that he is the father of the child. The only issue before the Probate and Family Court was the amount of child support to be ordered. The trial judge ordered the defendant to pay $160 per week and to maintain medical insurance for the child. Both parties appealed. We allowed the plaintiff's application for direct appellate review. We affirm the order below.[1]

The judge did not follow the child support guidelines issued by the Chief Administrative Justice of the Trial Court pursuant to G. L. c. 211B, § 15 (1990 ed.). A significant issue on appeal is whether the judge's reason for not doing so was impermissible, thus invalidating his order. The judge set forth his reasoning in a memorandum dated May 10, 1990, which we quote almost in its entirety as follows:

"The issue in this paternity case is whether the child support guidelines should be applied. The Paternity Statute, [G. L. c.] 209C, would seem to mandate that the guidelines be followed. See §§ 1 and 9(c). However, the guidelines themselves are presumptive, and the presumption may be overcome by findings that their imposition [is] unjust or inappropriate. Before analyzing the facts of this case I must confess that I have a philosophical difference with those who believe the guidelines should automatically be applied in paternity cases. My reasons are these:

"My objection to applying the guidelines to paternity cases rests upon my belief that support orders are not in fact 'child support' orders at all but rather are 'family' support. The money paid is not segregated for the child. It goes into one pot and is used for all the normal household expenses. . . . In the case of a married couple, the husband does have a general obligation to support his wife and children. In a paternity case however, there is no obligation to support the mother. In this case, the parties never lived together. There is

---

[1]We acknowledge the filing of briefs by the National Child Support Enforcement Association, Children's Defense Fund, Women's Legal Defense Fund, and Greater Boston Legal Services as amici curiae.

no 'Marvin case' theory, or any other, which would require the defendant to support the [mother]. In fact, however, he is made to support her by simply labelling the money 'child support.' I think the distinction between a married and an unmarried couple is a valid one. Unfortunately, the statute fails to recognize this difference, and imposes exactly the same economic burden on the father in both cases. The theory of not treating children differently is praiseworthy per se. Its application in a paternity case where the mother seeks support is based on a false premise, namely that the money paid by a father is 'child support' when in fact it is family support.

"Aside from my views as expressed above, are there reasons in this case why I should not follow the guidelines? The essential facts are these: The child was born on May 31, 1982. At that time neither the Paternity Statute nor the Child Support Guidelines existed. The mother went on AFDC [Aid to Families With Dependent Children] at once. Since then, the father has paid $45.00 a week pursuant to an agreement with the Department of Welfare. He has not missed a payment. When the child was conceived, the father was married and had three children (now 20, 19 and 16). He now is divorced and pays $240.00 a week for the support of the family, plus $122.00 a week towards the children's education. The mother gets $172.00 a week from AFDC, including food stamps. Her listed expenses are $144.00 a week. She is 37 years old (the father is 46) and has a degree in education. She chooses not to work. However she has been offered employment with the Division of Employment [&] Training beginning July 1, 1990, with a projected salary of $395.00 a week. The father is an attorney who makes $1,135.00 a week, gross. If the guidelines were to be followed, he would pay $264.00 a week to the mother. His expenses are listed at $891.00 a week, including the $240.00, the $122.00, and the $45.00 a week current support payments. His net expenses are $484.00 a week for himself. His taxes, etc. are $200.00 per week. If he were ordered to pay $264.00 a week to the mother in lieu of the $45.00 he now pays, he would have

$309.00 left over to meet his $484.00 weekly expenses. The mother's income would increase from $172.00 a week (including food stamps) to $264.00 a week, tax free. The question is whether or not it is just to increase his support to the mother by almost six times under the circumstances. On the one hand an argument can be made that he has had pretty much of a 'free ride' for eight years and now should pay what others pay, based on the same numbers. On the other hand he has paid what he was ordered to pay for eight years and during all of that time no one sought to increase the order. His net income, expenses, budget, life style, etc. all depend, in part, on the $45.00 a week he pays. Does he have any right to rely on the $45.00 a week order remaining essentially the same after eight years? I can easily envision a scenario where a man marries, has children, buys a home and, like most people, lives from pay check to pay check. He is then ordered to pay support that is so much higher than he was paying that he can't pay his mortgage, and he loses his home. Should this devastating impact on his life be considered? From the mother's point of view her income will rise substantially if the guidelines are followed. Should this factor be considered by the Court? My own feeling is that these two factors (the effect on each party) should be considered and given some weight. There is, in my mind, an element of either 'unfairness' or 'inappropriateness' here. Each case is different and all the facts must be weighed. I believe the size of the increase in support and the length of time the current amount has been paid should be considered. Obviously the financial impact on both parties (one good, one bad) must also be a factor. After giving careful consideration to all of the above, I decline to follow the guidelines, and order the defendant to pay $160.00 a week starting the week of July 1, 1990. He is also ordered to continue maintaining medical insurance for the child."

The child support guidelines, as amended by the Chief Administrative Justice of the Trial Court effective October 1, 1989, state: "The child support guidelines are formulated to be used by the justices of the Trial Court, whether the par-

ents of the children are married or unmarried, in setting temporary, permanent or final orders for current child support . . . ." The guidelines also state: "There shall be a presumption that these guidelines apply, absent agreement of the parties, in all cases seeking the establishment or modification of a child support order. A *specific, written finding that the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case*" (emphasis added).

The argument contained in the department's brief begins with the words: "The trial court violated the explicit language of G. L. c. 209C, § 9 and the Guidelines when it chose not to apply the Guidelines solely or primarily because the child in this case was born out of wedlock. The trial court's decision violates the plain language of the law and therefore should be reversed." We do not share the judge's view that support orders in paternity cases pursuant to the guidelines are really not child support orders but rather are family support orders, nor do we accept the proposition that ordinarily child support orders in paternity cases should not follow the guidelines. Therefore, if we were convinced that the support order entered here was a product of the judge's opposition to application of the guidelines to cases in which the child was born out of wedlock, we would hasten to reverse the order, but we are not convinced. Instead, we accept the judge's representation in his memorandum that, "[a]side from [his] views" about the merits of the guidelines in paternity cases, and in consideration of the facts of this particular case, which he found in detail, he concluded that there was "an element of either 'unfairness' or 'inappropriateness' " in following the guidelines which, consistent with the authority expressly granted by the guidelines, led him to decline to follow them.

We are not persuaded that the judge's determination that his following the guidelines in this case would have been unfair or inappropriate was erroneous, nor are we persuaded that the judge erred by ordering $160 weekly child support and the continued maintenance of medical insurance. When

a judge determines that application of the guidelines would produce an unjust or inappropriate result, the judge must attempt to fashion a more equitable order based on all the relevant considerations. General Laws c. 209C (1990 ed.), entitled "Children Born Out of Wedlock," § 9 (*c*), dealing with support, provides:

> "In determining the amount to be paid . . . the court shall apply the standards established by the chief administrative justice of the trial court or, in the absence of such standards, shall consider all relevant facts, including but not limited to:
>
> "(1) needs of persons entitled to support including necessary shelter, food, clothing, medical care and education;
>
> "(2) relative financial means of each parent, including their standard of living, age, health, station, occupation, amount and sources of income, including unearned income, vocational skills, employability, estate, liabilities and opportunity of each for future acquisition of capital assets and income;
>
> "(3) earning ability of each parent;
>
> "(4) age of the child;
>
> "(5) need and capacity of the child for education, including higher education;
>
> "(6) value of services, including those as a homemaker, contributed by the custodial parent; and
>
> "(7) the amount necessary for the obligor's minimum subsistence, including food, shelter, utilities, clothing and the reasonable expenses necessary to travel or obtain employment."

The judge's findings suggest that he considered the relevant facts articulated in § 9 (*c*), including the best interests of the child, which are at the heart of the guidelines, when he determined that the $264 called for by the guidelines was unfair or inappropriate, and when he decided that $160 weekly support plus the maintenance of medical insurance would be

suitable. Prior to the promulgation of the guidelines, the test on review was whether the judge abused his discretion in making determinations of that kind. *Ross* v. *Ross*, 385 Mass. 30, 33-34, 36-38 (1982). Also, after the guidelines were promulgated, the Appeals Court reviewed a decision to disregard them under an abuse of discretion standard. *Camillo* v. *Camillo*, 31 Mass. App. Ct. 286, 292-293 (1991). Although the guidelines considered in that case were promulgated before the guidelines became presumptive, we are unaware of a sound reason to apply a different standard of review in a case such as this one involving presumptive guidelines. Applying that standard, we perceive no abuse of the judge's discretion. Therefore we affirm the judgment.

*So ordered.*