JOAN G. CANNING vs. RICHARD P. JUSKALIAN.

No. 90-P-863.

Hampshire. September 5, 1991. - August 21, 1992.

Present: WARNER, C.J., PERRETTA, & JACOBS.

*Divorce and Separation*, Modification of judgment, Child support. *Statute*, Construction.

In a proceeding for modification of a judgment of divorce, the Probate Court judge acted within his discretion in finding that strict application of the Massachusetts Child Support Guidelines (1989) would be inappropriate, and in adjusting the child support order to reflect the noncustodial parent's actual cost of coast-to-coast transportation of the parties' child in connection with agreed visits, as well as the economic relief to the custodial parent represented by the child's absence for the visits. [203-206]

In a former wife's proceeding for modification of the child support provisions of a judgment of divorce, the Probate Court judge, consistent with the Massachusetts Child Support Guidelines (1989), properly attributed income to her at a time when she was unemployed by choice and was caring for the two year old child of her subsequent marriage [206-210], and the judge's determination of the amount so attributed was not clearly erroneous [210-211].

COMPLAINT for divorce filed in the Hampshire Division of the Probate and Family Court Department on April 9, 1979.

A complaint for modification, filed on February 9, 1989, was heard by *Sean M. Dunphy*, J.

*Robert J. Lefebvre* for the plaintiff.

*Wendy Sibbison* for the defendant.

JACOBS, J. The parties were divorced in 1981. The former wife (Joan) appeals from a 1989 judgment of modification of the Probate Court, contending that the child support obligation of her former husband (Richard) for their thirteen year old son (Brett), who is in her custody, was not increased sufficiently. The judgment increased the child support order

from $45 per week to $115 per week.[1] Joan argues that the judge erred in attributing income to her at a time when she was the custodian of a two year old child of a subsequent marriage. She also claims that the amount of income attributed to her is not supported by the evidence. We affirm.

The facts as found by the judge and amplified by uncontroverted information in the record are as follows. As of the time of the modification hearing, each of the parties had remarried. Joan's household was located in California and, in addition to Brett, included her husband and their two year old daughter. Richard's household was located in Massachusetts and included his wife and their two children, aged four and seven. Richard and his wife were both employed as school teachers with annual combined earnings of $72,000, approximately $37,000 of which was attributable to Richard. In addition to their residence, they owned a house, which was not held for investment purposes and which they were attempting to sell. Joan was unemployed by choice and at home caring for her two year old child. Her husband's annual income was $63,000. In addition to their residence, they owned two parcels of real estate from which they derived income and tax benefits (the amounts of which the judge found were not accurately disclosed to him). Joan possessed a bachelor of science degree in human development. Three years after moving to California from Massachusetts in 1982, she became employed as a real estate agent, earning $11,000 in 1985, $15,600 in 1986, and $14,870 during 1987, the latter amount having been earned during the first six months of 1987 and prior to the birth of her child in the summer of that year. She has not sought employment since that time.

After the judgment of modification was entered in this case, the judge filed a form on which he indicated that he found the "presumptiveness of the Child Support Guidelines

---

[1] The modification judgment also altered the provision with respect to medical expenses to require each of the parties to pay one-half of all uninsured medical costs for Brett after the first $100 which was to be paid by Joan. Prior to the modification, the entire burden of that expense was Joan's. The modification with respect to payment of medical costs is not contested in this appeal.

ha[d] been rebutted" for the reason that "their application would be unjust or inappropriate because: The non-custodial parent will incur extraordinary expenses (e.g., uninsured medical; travel related visitation) as follows: payment of airplane travel as provided in Judgment."

Several weeks later, the judge filed findings of fact wherein he indicated that the parties had stipulated to Brett's visiting with Richard in Massachusetts for five weeks each summer and during alternate Christmas school vacation periods. The judge explained that he "considered whether the support order should be reduced or eliminated during the summer visitation, and concluded the amount ordered paid each week year-round was the fairest approach." He also indicated that he "deducted $20 a week to offset the actual expenses to be incurred by [Richard] in connection with transportation, resulting from [Joan's] moving to California." The judge's findings also reflect that he concluded that Joan was "earning substantially less than she could . . . through reasonable efforts" and that he considered both Joan's "potential earning capacity based upon her prior earnings in California, and a sum attributable to income from rental property when making computations in accordance with the guideline suggestions. The combined amount used is $30,000." He also stated that "[i]n considering the totality of the parties' circumstances as suggested by the guidelines, the Court also considered the existence of subsequent families."

The Massachusetts Child Support Guidelines[2] made effective on October 1, 1989, have presumptive application "in all cases seeking the . . . modification of a child support order." The guidelines also state: "A specific, written finding that the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case."[3] Here, the judge made just such a finding, implic-

---

[2]The guidelines were promulgated by the Chief Administrative Justice of the Trial Court pursuant to G. L. c. 211B, § 15. *Department of Rev. v. Roe*, 29 Mass. App. Ct. 967, 968 (1990).

[3]The provision for the rebuttable presumption of applicability is contained within Federal law which provides for the establishment of child support guidelines as a condition of eligibility for funding of State plans

itly concluding that the basic support order of approximately $204 to $237 per week called for by the guidelines[4] was either unfair or inappropriate. We test that determination under an abuse of discretion standard. *Department of Rev.* v. *G.W.A.*, 412 Mass. 435, 441 (1992), citing *Camillo* v. *Camillo*, 31 Mass. App. Ct. 286, 292-293 (1991).

Child visitations involving the expense of coast-to-coast travel each summer and every other Christmas are not common to ordinary divorce arrangements. The guidelines style themselves as being "based upon traditional . . . visitation arrangements," Guideline II-D(1), and expressly authorize a judge to consider extraordinary travel-related expenses in fashioning a support order.[5] The five weeks' summer visitation agreed upon by the parties and specifically linked to the support order by the judge provides further justification for deviation from the guidelines as does his finding that he "considered the existence of subsequent families." See Guidelines II-D(2) and II-J. See also Smith, Grounds for Deviation, Checklist for Cases Outside Support Guidelines, 10 Fam. Advoc. J. 22, 26 (Spring, 1988). The judge did not abuse his discretion in concluding that, in the circumstances, strict application of the guidelines would yield unfair and inappropriate results.

Having made a finding which rebutted the presumptive applicability of the guidelines, the judge was obliged "to fashion a more equitable order" than would result from mere mechanistic calculation and to base that effort on "all the relevant considerations." *Department of Rev.* v. *G.W.A.*,

---

for aid and services to needy families with children. See 42 U.S.C. §§ 601, 667 (1988).

[4]The basic order reflects an adjustment for the age of the oldest child for whom support is sought but does not include an adjustment for the income of the custodial parent. The range of the basic figure is attributable to the 25% - 29% multiplier available in the circumstances. See Guidelines III-A and III-B.

[5]Guideline II-D(2) provides in pertinent part: "In some instances, the non-custodial parent may incur extraordinary travel-related expenses in order to exercise court ordered visitation rights. To foster parental involvement with the children, the court may wish to consider such extraordinary expenses in determining the support order."

*supra* at 439-440. In the absence of any provision in the guidelines expressly suggesting how a fairer support order is to be constructed,[6] we measure the factors and adjustments considered by the judge against the relevant common law background.

Given the importance which attaches to "both parents hav[ing] frequent and continuing association with their child," *DiRusso* v. *DiRusso*, 12 Mass. App. Ct. 892, 893 (1981), and the broad recognition of the "interests of the non-custodial parent and the child in visiting with each [other]," Kindregan & Inker, Family Law and Practice § 1171 (1990), extensive adjustment of a support order to accommodate extended long-distance visitation is generally warranted and in the child's best interest. Thus, adjusting the support order to reflect the actual cost of coast-to-coast transportation and the economic relief to Joan represented by a five-week visit by Brett with his father was clearly within the judge's discretion.

The concept of joint parental responsibility for child support is well established.[7] "[T]here is no question that G. L. c. 208, § 28 [authorizing child maintenance orders in divorce and modification actions], imposes a duty of child support on the wife as well as on the husband." *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 341 (1980). "Accordingly, [a wife's] assets and income, if any, must be considered in assessing [a complaint] for modification." *Id.* at 342. Also reflected in the case law is the principle that earning capacity of a parent rather than actual income may be considered in determining child support orders. *Schuler* v. *Schuler*, 382 Mass. 366, 372-374 (1981). *Diver* v. *Diver*, 402 Mass. 599, 601-602 (1988). The inclusion of both custodial and noncustodial par-

---

[6]For a discussion of how the guidelines in some states specifically account for extraordinary expenses, see Goldfarb, Dealing with Extraordinary Expenses, 10 Fam. Advoc. J. 38 (Spring, 1988).

[7]Joint parental responsibility for child support is expressly espoused by G. L. c. 211B, § 15, the enabling legislation for the guidelines. The "modified income shares approach" of the guidelines adopts that concept. See Ryan, An Overview of the Massachusetts Child Support Guidelines, 5 Mass. Fam. L.J. 1, 2-3 (1987).

ents within the sweep of that principle is fully consistent with the concept of joint parental responsibility for child support. The broad discretion historically accorded trial judges in actions to modify child support orders, see *Buchanan* v. *Buchanan*, 353 Mass. 351, 352 (1967), amply permits the consideration and balancing of all relevant factors in the application of the principle of attribution of income.[8] To the extent, therefore, that the judge's preliminary finding may have rendered the guidelines inapplicable, existing law did not prevent his considering Joan's earning capacity in fashioning the child support order, notwithstanding that she was living at home with a child of a subsequent marriage.

Joan, implicitly, and we believe correctly, assumes that the preliminary finding, focused as it was upon travel expenses, permits deviation from, but not total disregard of, the guidelines, and grounds her argument upon Guideline II-H which states:

### "H. ATTRIBUTION OF INCOME

"If the court makes a determination that either or both parties is earning substantially less than he or she could through reasonable effort, the court may consider potential earning capacity rather than actual earnings. In making this determination, the court shall take into consideration the education, training, and past employment history of the party. These standards are intended to be applied where a finding has been made that the party is capable of working and is unemployed, working part-time or is working a job, trade, or profession other than that for which he/she has been trained.

"This determination is not intended to apply to a custodial parent with children who are under the age of six living in the home."

---

[8]Any attribution should be approached with the realistic caution described in the decisions of this court. See *Frederick* v. *Frederick*, 29 Mass. App. Ct. 329, 334 (1990), and cases cited.

She maintains that, since her two year old daughter was "living in the home" with her, the last sentence of Guideline II-H precluded the attribution of income to her. While a weighing of general policy considerations[9] makes the question extremely close, we believe that the objectives and text of the guidelines tilt the balance in favor of holding that the words "custodial parent with children" do not encompass the children of a subsequent marriage.

Contrary to Joan's claim, the word "children" must be interpreted restrictively. "Children" and "child" are used repeatedly throughout the guidelines to refer to the children to whom the parties have a joint responsibility. It is a settled canon of statutory construction that, "in the absence of a plain contrary indication, a word used in one part of a statute in a definite sense should be given the same meaning in another part of the same statute." *Plymouth County Nuclear Information Comm., Inc.* v. *Energy Facilities Siting Council*, 374 Mass. 236, 240 (1978). See *Lockwood* v. *Adamson*, 409 Mass. 325, 333-334 (1991), and cases cited. This basic rule of statutory construction is equally applicable to a comprehensive body of provisions such as the guidelines. The restrictive construction of "custodial parent with children" is fur-

---

[9]Among the considerations favoring nonattribution of income are those related to (1) avoiding the creation of economic disincentives to remarriage and the rearing of children; (2) not punishing innocent children for their parents' actions; (3) giving priority to the "nurturing parent" doctrine, see, e.g., *Hesidenz* v. *Carbin*, 354 Pa. Super. 610, 616-618 (1986); and (4) recognizing that the income generated by attribution is often fictional and, therefore, of no benefit to the child entitled to support. See Malone, Modification Lives, 10 Fam. Advoc. J. 42, 45 (Spring, 1988).

Considerations favoring attribution include those related to (1) serving the fundamental objective of minimizing the economic impact of family breakup on children by discouraging parental unemployment and underemployment; (2) recognizing that staying at home to care for subsequent children frequently constitutes volitional unemployment, see, e.g., *Marriage of Jonas*, 57 Wash. App. 339, 340 (1990); and (3) placing the burden of any hardship to children of a second marriage upon those who voluntarily formed the second family. See *O'Brien* v. *O'Brien*, 325 Mass. 573, 578 (1950).

ther supported by the text of Guideline II-J.[10] There, where the drafters intended to refer to children of a subsequent marriage, they did so expressly and without ambiguity.

Moreover, under the construction urged by Joan, her two year old child of a subsequent marriage would entitle her to automatic relief from her financial obligations to Brett if she chose to be unemployed or underemployed while Richard's financial burden (assuming stable income) either would be unaffected or increased notwithstanding that he also had an under six year old child of a subsequent marriage living at home.[11] The only provision for consideration of the expenses related to the children of Richard's subsequent marriage is contained in Guideline II-J, see note 10, *supra*, which permits the exercise of judicial discretion in behalf of the noncustodial parent in limited circumstances. Richard would suffer similarly disparate treatment if he chose to stay at home with the four year old child of his subsequent marriage. As the noncustodial parent of Brett, he would not be entitled to exemption from income attributions under Guide-

---

[10]"EXPENSES OF SUBSEQUENT FAMILIES

"In instances where the non-custodial parent has remarried and has children by a subsequent marriage, the court should examine such circumstances closely to determine in the allocation of available resources whether consideration beyond Part II Section I (Prior Orders of Support) should be given when the custodial parent of children born[ ] of the first marriage, or subsequent marriages appears before the court seeking a modification of the existing child support order. In actions pursuant to G. L. c. 209C, this paragraph shall be construed to apply equally to children born out of wedlock."

[11]Under the formula of the guidelines for computing child support, the basic order is based upon the gross income of the noncustodial parent and the number and age of the children of the parties. That order is subject to a formulaic adjustment grounded on the *custodial parent's* actual or imputed gross income reduced by a $15,000 "disregard" after consideration of day care expenses. See Guideline II-C. This formula assumes and encourages financial contribution by the custodial parent. However, no income may be imputed to a "custodial parent with children who are under the age of six living in the home." Guideline II-H. This provision operates to remove the custodial parent's potential earning capacity from consideration during the exemption period, thereby maintaining the obligation of the noncustodial parent at the level of the basic order.

line II-H.[12] Joint parental contribution is central to the phi-
losophy of the guidelines. Retreat from that thesis is permit-
ted while any child of the parties has not reached grade
school age.[13] A construction which permits further retreat
from that central philosophy, possibly extending through the
age of minority of the parties' children if the custodial parent
continually has "subsequent" children under the age of six
during that period, is to be avoided, especially when pre-
mised upon an interpretation which irrationally dictates dis-
parate treatment of similarly situated parties. See *Board of
Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass.
339, 355 (1973). Accordingly, we conclude, from the text of
the guidelines[14] and the priority accorded by them to chil-
dren of first families,[15] that the needs of children of subse-
quent marriages can better be dealt with under Guideline II-
J and the exercise of judicial discretion than by placing un-
due strain on the language of Guideline II-H.

In attributing income to Joan, the judge resorted to two
sources: (1) her potential earning capacity; and (2) an

---

[12]On the other hand, if expansive definition is given to "custodial par-.
ent" to encompass a party who has a child by a subsequent marriage, a
decision by both Joan and Richard to become primary care providers for
their preschool age children would result in no required support for Brett
under the guidelines, except for the minimum order of $50 per month
mandated by Guideline II-C — an obviously absurd outcome.

[13]A provision of an early version of Guideline II-H which extended the
attribution exemption to a custodial parent "who chooses to be home with
the children when they are not in school" was deleted, thereby effectively
limiting the exemption in the final guidelines to children who had not
reached grade school age.

[14]The issue before us easily could have been resolved by more precise
drafting. See, e.g., Colo. Rev. Stat. § 14-10-115(7)(b)(I) (1987) (potential
income not considered for a parent who is caring for a child two years of
age or younger "for whom the parents owe a joint legal responsibility");
La. Rev. Stat. Ann. § 9:315.9 (West 1991) (earning potential not consid-
ered when party "is caring for a child of the parties under the age of five
years"); Md. Family Law Code Ann. § 12-204(b) (1991) (determination
of potential income may not be made for a parent who "is caring for a
child under the age of two years for whom the parents are jointly and
severally responsible").

[15]See Report of the Guidelines Committee to the Governor's Commis-
sion on Child Support (October, 1985), appearing in Child Support Guide-
lines (Mass. Continuing Legal Ed., Inc., 1988), at 69, 73.

amount attributable to her rental property. His settling upon $30,000 as the combined sum allocable to those sources is not clearly erroneous. Mass.R.Dom.Rel.P. 52(a), as amended (1987). Joan's prior earnings, especially those creditable to her last six months of work, support a substantial portion of the attribution. We cannot say the augmentation by the judge of that portion with an unstated amount from Joan's real estate holdings is an abuse of discretion given his finding, supported by our review of the evidence, *Schuler* v. *Schuler*, 382 Mass. at 378, that she inaccurately disclosed her real estate income and benefits. See *Mancuso* v. *Mancuso*, 12 Mass. App. Ct. 973, 974 (1981). Estimation is inherent in the attribution of future earnings. In the circumstances, the degree of estimation reflected in the judge's finding is not unreasonable.

*Judgment affirmed.*