GERALD C. BASSETTE vs. CLARA E. BARTOLUCCI.

No. 93-P-1530.

Hampden. October 21, 1994. - July 14, 1995.

Present: DREBEN, SMITH, & PORADA, JJ.

*Divorce and Separation*, Modification of judgment, Child support.

In a proceeding for modification of a support order in a divorce judgment
    the Probate Court judge correctly ruled that support payments under
    the Child Support Guidelines were to be calculated based on the
    father's earning capacity rather than on his actual income, where the
    father had made a voluntary career change. [734-736]
The judge of the Probate Court properly considered the mother's assets
    and income in assessing the father's petition for modification of a sup-
    port order [736-737] and the judge did not abuse her discretion by
    allowing the mother's request for modification and denying the father's
    [737].

COMPLAINT for divorce filed in the Hampden Division of
the Probate and Family Court Department on March 6,
1986.

A complaint for modification, filed on July 2, 1992, was
heard by *Marie E. Lyons*, J.

*David P. Connor* for the father.

*Edward J. Partyka* for the mother.

SMITH, J. Gerald C. Bassette (father) appeals from a Pro-
bate Court judge's order allowing Clara E. Bartolucci's
(mother) complaint for modification and denying his coun-
terclaim for modification. The father also claims that the
judge's subsequent order allowing the mother's motion for a
wage assignment was improper.

On May 28, 1986, the parties were granted a divorce in
the Hampden County Probate and Family Court. They were
ordered to comply with the terms of a separation agreement
that required the father to pay to the mother child support

for their three minor children in the amount of $175 weekly. After the two older children went to live with the father, both parties agreed that the father need pay only fifty dollars a week in child support, so long as the father provided a residence for and support of the two children who lived with him. The mother agreed to the decrease in support for the additional reason that she was residing with her second husband who provided a home for the minor child remaining in her care and contributed to other expenses on the child's behalf.

On July 2, 1992, the mother filed a complaint for a modification of the 1986 judgment to require the father to pay child support for the one minor child living with her in an amount consistent with the Child Support Guidelines (1989). The father filed a counterclaim requesting modification of the original judgment, claiming that he had taken early retirement, and his income had been substantially reduced.

Both the mother's claim and the father's counterclaim were heard by a Probate Court judge. We summarize the judge's findings of facts and rulings and supplement them with undisputed facts contained in the record.

On October 2, 1992, the father, who was employed as a letter carrier, took early retirement from the United States Postal Service because he and his second wife wanted to perform missionary work in Jamaica. At the time he retired from the postal service, the father's average weekly wage was $735. At retirement the father received a $6,000 retirement incentive bonus. The two children who had been living with him were no longer minors and were living on their own.

The government authorities in Jamaica would not allow the father and his second wife to obtain paying jobs. Therefore, after the father and his second wife moved to Jamaica to perform missionary work, their only source of income was the father's retirement pension of $235 a week which, after deductions, yielded $207 a week.

Meanwhile, the mother was in the process of leaving her second husband. The mother had to provide a residence for her minor child and could no longer depend on her second

husband to contribute toward the child's expenses. She obtained an apartment in West Springfield and at the time of the hearing was working at two jobs — as a waitress and cleaning offices. Her net weekly income was $245.85, and her weekly expenses were $517.87.[1]

The judge ruled that, even accepting the parties' agreement reducing the original order of support from $175 to $50, support for the minor child should be increased to $175 because a material and substantial change in the circumstances had been established. In particular, the judge found that the minor child's expenses were no longer being subsidized by the mother's second husband, thereby increasing the mother's expenses for the minor child. In addition, the father was no longer supporting the other children of the marriage.

The judge rejected the father's argument that his obligation to support his minor child was secondary to his right to take early retirement or to cease working for pay.[2] Therefore, the judge ruled that the support payments under the Child Support Guidelines would be calculated on the father's earning capacity, rather than on his actual income at the time of the hearing.

Based on the father's income at the time he left the postal service and including the $6,000 bonus, the judge calculated the father's earning capacity to be $735. Using the Guidelines, the judge ordered that the father pay $175 a week for child support. On appeal, the father contends that the judge committed error by calculating the Child Support Guidelines

---

[1]The judge specifically found that the mother's financial statement filed at the time of the hearing accurately reflected her income and expenses after she left her second husband.

The judge found that the father's financial statement did not accurately reflect his income and expenses because he deducted the cost of medical and life insurance twice.

[2]As a basis for this finding, the judge noted that the father testified that, if he had known that his daughter's needs were not going to be met as a result of the mother leaving her second husband, he would not have taken early retirement.

based on his earning capacity rather than his actual income.[3] We disagree.

The earning capacity of a parent rather than actual income may be considered in determining child support orders. *Canning* v. *Juskalian*, 33 Mass. App. Ct. 202, 206 (1992). In fact, Section II-H of the Child Support Guidelines (1989)[4] explicitly states, "If the court makes a determination that either or both parties is earning substantially less than he or she could through reasonable effort, the court may consider potential earning capacity rather than actual earnings."

As far as we can ascertain, Massachusetts courts have not yet addressed the specific issue of whether a voluntary early retirement that reduces income justifies a reduction in child support obligations. The general issue, however, of the effect of voluntary career changes on support orders was addressed in *Schuler* v. *Schuler*, 382 Mass. 366 (1981). In *Schuler*, the court held that although the father had "persuasive reasons," including "personal fulfillment," for making a career change which resulted in a much lower income, "those reasons must be balanced against his obligations to support his former . . . famil[y]." *Id.* at 372. "[T]he general rule [is] that where the support provider is earning less than he could with reasonable effort, the trial judge may consider potential earning capacity rather than actual earnings." *Id.* at 374. See also *Canning* v. *Juskalian*, *supra* at 207, where the court considered a mother's potential earning capacity where she had chosen to remain at home with a child of a subsequent marriage.

Here, the father, like the father in *Schuler* and the mother in *Canning*, made a voluntary decision to change his career.

---

[3]On appeal, the father claims that the judge should not have included the $6,000 retirement bonus that the father received in her calculations of the Child Support Guidelines. However, the Guidelines specifically state that income includes bonuses. Otherwise, the father does not challenge the computations made by the judge, except that they should have been based on actual income.

[4]"The guidelines were promulgated by the [then] Chief Administrative Justice of the Trial Court [now called the Chief Justice for Administration and Management] pursuant to G. L. c. 211B, § 15." *Canning* v. *Juskalian*, *supra* at 204 n.2.

He left his job with the postal service to become a missionary in Jamaica where the authorities would not allow him to take a paying job. The resulting drastic decrease in his income is the consequence of his own choice to fulfill his desire to become a missionary in Jamaica. Although there was no evidence that the father made this career change in order to avoid his child support obligations, there was also no evidence that the persons seeking modifications in *Schuler* v. *Schuler* and *Canning* v. *Juskalian* sought to avoid their obligations; the presence or absence of bad faith in the parent's career change was simply not a factor in those decisions.[5]

Nor was there evidence that the father was forced to retire from his position due to injury or other reasons beyond his control. Because his was a voluntary career change, the father retains the ability to pay the ordered amount of child support, based on his potential rather than actual earning capacity.

It was proper for the judge to consider the mother's assets and income in assessing the father's petition for modification. *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980). The mother's separation from her second husband may be considered with other factors in determining whether there has been a change in her circumstances. *Winsor* v. *Manning*, 27 Mass. App. Ct. 1111, 1112 (1989). Both parents are responsible for child support, and the assets and income, including potential income, of both should be considered in determin-

---

[5]The father does not claim that he is entitled to a reduction in child support because his purpose in taking early retirement was for religious reasons.

Other decisions that are concerned with the question of voluntary retirement to meet spiritual obligations include *Dunn* v. *Dunn*, 105 Mich. App. 793 (1981), and *McKeever* v. *McKeever*, 36 Or. App. 19 (1978). In *Dunn*, the court ruled that where the father had taken a vow of poverty upon joining a religious order and was clearly acting in good faith and not in wilful disregard for the interests of his children, the amount of child support he is required to pay should be based on his actual income and not upon his potential income. By contrast, in *McKeever*, where the father voluntarily retired from his employment in order to take a nonpaying job with a Christian evangelical organization, the court held that, although the father may have made his decision in good faith, that could not prevail over his paramount obligation to support his dependents.

ing child support orders. *Silvia* v. *Silvia, supra* at 341. *Canning* v. *Juskalian, supra* at 206.

In deciding whether to modify a support or alimony order, a probate judge must weigh all relevant circumstances. "Resolution of the issue rests in the judge's sound discretion." *Schuler* v. *Schuler,* 382 Mass. at 370. See also *LoStracco* v. *LoStracco,* 32 Mass. App. Ct. 1, 5 (1992) (Probate Court judge has considerable discretion in determining equitable resolution in modification proceedings). Here, the judge did not abuse her discretion by allowing the mother's request for modification and denying the father's counterclaim.

The father also claims that the wage assignment ordered by the judge was improper. The mother's motion for the wage assignment and the judge's order allowing the assignment took place months after the father's filing of a notice of appeal from the judge's order on the modification of the child support order. The father never filed an appeal from the wage assignment order, and therefore, we do not consider it.

*Judgment affirmed.*