DECIO F. F. LEONARDO *vs.* DORINDA LEONARDO.[1]

No. 94-P-1921.

Worcester. March 14, 1996. - June 11, 1996.

Present: IRELAND, GILLERMAN, & LENK, JJ.

*Divorce and Separation,* Child support, Impoundment order.

In the circumstances of a divorce action, the probate judge did not abuse her discretion or act arbitrarily in ordering the husband to pay a certain amount per week in child support for the care and maintenance of his five minor children that was more than the amount calculated under the child support guidelines. [574-578]

In a divorce action, there was no error in a Probate Court judge's denial of the pro se husband's request for a copy of an impounded report of a guardian ad litem where he had been told in detail previously of the contents of the report by his then attorney. [578]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on January 19, 1993.

The case was heard by *Arline S. Rotman,* J., and a motion for a child support order, filed on April 8, 1994, was also heard by her.

*Decio F. F. Leonardo,* pro se.

IRELAND, J. The plaintiff, Decio Leonardo, appeals from a supplementary judgment in his divorce action ordering him to pay his former wife, Dorinda Leonardo (wife), $140 per week in child support for the care and maintenance of their five minor children. Mr. Leonardo contends that the order constitutes an abuse of discretion on the part of the Probate Court judge, as the amount ordered exceeds the trial court's recommended child support guidelines, as revised January, 1994, and is unsupported by the weight of evidence in the record.

---

[1] The defendant filed no brief in this appeal. The plaintiff appears pro se.

In 1993, during the pendency of divorce proceedings be-
tween the husband and the wife, the husband was unemployed
and was receiving unemployment benefits. The parties agreed
— and the court so ordered — that the wife would have
physical custody of the minor children and the husband would
pay $125 per week to the wife for child support. The parties
also agreed to a detailed schedule for the husband to visit the
children. The support order was "[t]o be reviewed when [the
husband] becomes employed." The judgment of divorce nisi,
dated July 22, 1993, incorporated the parties' agreements,
including the one for child support.

Subsequently, Mr. Leonardo found full-time employment,
thus prompting the wife's postjudgment motion for a revised
child support order. At a hearing on the motion, certain facts
were adduced. The husband cared for the children on various
days of the week in order to accommodate the wife's work
schedule. This represented a departure from the parties' stip-
ulated visitation schedule. At the same time, the husband
hired and paid for a babysitter to cover in part the various
times during the week when he and the wife were both at
work. The wife also paid child care expenses for other times
during the week when the children needed care. Based upon
the parties' respective incomes, the children's day care expen-
ses (the wife would assume all day care costs), and the age of
the oldest child, the judge calculated the husband's support
order according to the child support guidelines and arrived at
a figure of approximately $120 per week. That figure, the
judge pointed out, amounted to a net decrease from the $125
the wife had previously received while the husband was
unemployed.

Because the husband was now working full time, the judge
increased the weekly amount to $140. She based her decision
on the large number of minor children needing support (the
judge noted that the guidelines make scant provision for ad-
ditional children beyond the third child)[2]; and on the fact
that the wife earned substantially more money than the
husband and, thus, the setoff of her income against his, as al-
lowed under the guidelines, would unfairly inure to the

[2]The guidelines worksheet provides for a discretionary increase in the
noncustodial parent's support order of only 2% for three children or more,
regardless of number.

husband's benefit by reducing his weekly child support obligation.[3]

In making her order, the judge, as noted above, relieved the husband from paying any further child care or babysitting expenses which, under the guidelines, are to be borne exclusively by the custodial parent. See Child Support Guidelines, Part II.E. (1994). The judge recommended that the husband *not* subscribe to and pay for family health insurance benefits through his employer, as the wife already carried health insurance for the family. Finally, the judge ordered that the husband should take the standard tax deductions for two of his five children, where, previously, he had taken the deduction for only one of the children.

As support for his appeal, the husband now points to certain transgressions (as he sees them) on the judge's part. According to the husband, the judge ignored the fact that he cared for the children at various times during the week which were over and above those that had been specified in the visitation schedule, and that he also paid for child care during those times. In response, the judge stated that she was "going on the assumption that [the wife] is going to pay the babysitter" — a position consistent with the child support guidelines that assign those expenses exclusively to the custodial parent. The husband implies that the judge unfairly denied him the opportunity to continue paying child care expenses. The argument makes little sense. Had the husband's view prevailed, he could have been ordered to pay the full amount under the guidelines, and would have paid certain child care expenses as well.[4] As things turned out, however, the judge exceeded the recommended figure by a slight amount, but also suggested that the husband *not* pay further child care expenses.

Next, the husband complains that the judge "accelerated" his oldest child's thirteenth birthday by several months and

---

[3]The guidelines worksheet used to calculate support orders uses a ratio based upon the custodial parent's annual income (after deductions) and the total available income of both parents to reduce the noncustodial parent's support obligation. If as here, the custodial parent's income is substantially more than that of the noncustodial parent, the support order is sharply reduced.

[4]During oral argument on this appeal, the husband estimated the amount he had been paying at around $30 per week.

thereby increased by fifteen percent the basic order which she calculated would be due under the guidelines, rather than by the ten percent that would have been applied had the child's actual age at the time of the order been used. Acceleration of the child's birthday, however, resulted in a net increase of less than $10 per week over the correct amount that would have been due.[5]

Finally, the husband has calculated the amount that should have been due under the guidelines and has arrived at a figure of $92.37, an amount less than the judge's figure of $120.[6] The husband argues that the judge increased substantially and unfairly to $140 per week the guideline amount of $92.37 per week.[7]

In cases such as this involving the modification of a child support order, "[t]here shall be a presumption that [the] guidelines apply . . . . A specific, written finding that the guidelines would be unjust or inappropriate and that the best interests of the child[ren] have been considered in a particular case shall be sufficient to rebut the presumption in that case." Child Support Guidelines (1994). See also, *Department of Revenue* v. *G.W.A.*, 412 Mass. 435, 439 (1992), and *Canning v. Juskalian*, 33 Mass. App. Ct. 202, 204 (1992), both quoting from the Child Support Guidelines, effective from October 1, 1989 to January 1, 1994. We review a judge's findings that the guidelines should not apply by using an abuse of discretion standard. *Id.* at 205; *Department of Revenue* v. *G.W.A.*, *supra* at 441.

In her written findings, the judge emphasized that the five minor children needed support and that the wife's earnings were substantially more than the husband's, resulting in a large setoff from his income. See note 3, *supra*. She further

[5]Based upon forty-seven rather than fifty-two weeks of child care expenses (see n.6 *infra*).

[6]But on the form entitled "Child Support Guidelines-Findings" a figure of $99 per week had been written in. We are unable to explain the discrepancy.

[7]Based upon the husband's arguments that forty-seven, not fifty-two, weeks of child care expenses should have been deducted, and that the child's age should not have been accelerated, the recommended amount according to the guidelines worksheet would be $115.83, not the husband's $92.37. If the child's age was accelerated and forty-seven weeks of child care expenses were deducted the amount would be $124.78.

found that "[g]uidelines support would barely cover child care and health insurance costs [both born by the wife]" and that "[t]he noncustodial parent [the husband] was paying $125 weekly [for support] on unemployment comp[ensation]."

In *Department of Revenue* v. *G.W.A., supra,* the Supreme Judicial Court concluded that although certain reasons set forth by a District Court judge for declining to follow the guidelines may have been improper,[8] his over-all finding that application of the guidelines in a paternity action seeking an order for support would be "unfair" or "inappropriate" was not erroneous, *id.* at 438, or an abuse of discretion. *Id.* at 441. The resulting order for support of $160 per week, plus maintenance by the father of medical insurance for the child, was upheld by the Supreme Judicial Court as reasonable, even though under the guidelines payment would have been $264 per week, *id.* at 440, where the order was based upon relevant considerations set forth in G. L. c. 209C, § 9(*c*), for the support of children born out of wedlock, *ibid.*, and where the father also supported three minor children from a prior marriage. *Id.* at 437.

Here, as in *Department of Revenue* v. *G.W.A.,* the decision to depart from the guidelines was based at least partially upon impermissible factors — most notably the judge's view that the guidelines would allow the husband an undeserved and overly generous setoff in his support payment because of the wife's income. Nowhere do the guidelines expressly or impliedly permit the judge to weigh the comparative incomes of the custodial and noncustodial parent as a factor in deciding whether or not the guidelines should apply. Compare *Canning* v. *Juskalian,* 33 Mass. App. Ct. at 205, 207, and *Doe* v. *Roe,* 32 Mass. App. Ct. 63, 67 (1990) (trial court judge's decision based on certain specific factors, to deviate from child support guidelines in each case was not an abuse of discretion, where guidelines expressly or impliedly allowed judge discretion to consider those factors).

The guidelines in fact adopt a "modified income share" approach. *Canning* v. *Juskalian, supra* at 206 n.7. The *total*

---

[8]Those considerations included the District Court judge's view that "support orders in paternity cases pursuant to the guidelines are really not child support orders but rather are family support orders," and that "ordinarily child support orders in paternity cases should not follow the guidelines." 412 Mass. at 439. See also *id.* at 436.

income available to *both* parents to meet the needs of their minor children (after certain deductions) is to be factored into an order for support from the noncustodial parent. See Child Support Guidelines, Part I, and worksheet (1994). "The concept of joint parental responsibility for child support is well established. . . . [T]here is no question that G. L. c. 208, § 28 [authorizing child maintenance orders in divorce and modification actions], imposes a duty of child support on the wife as well as on the husband. Accordingly, [a wife's] assets and income . . . must be considered in assessing [a complaint] for modification.' " *Id.* at 206, quoting from *Silva* v. *Silva,* 9 Mass. App. Ct. 339, 341, 342 (1980). Nonetheless, the judge's decision here increasing the guidelines' support payment (rather than, as in *Department of Revenue* v. *G.W.A.,* decreasing the support payment) was justified, as the husband, apparently, has no other child support obligations, does not maintain or pay for health insurance, and has five minor children from the marriage who are in need of support.

On balance, we conclude that the judge's considerations — taken in their totality and not as isolated bits — amply support her order. She did not abuse the discretion reposed in a probate judge "to fashion a more equitable order," *Department of Revenue* v. *G.W.A.,* 412 Mass. at 440, once the formula under the guidelines had been rebutted as unjust or inappropriate; nor did she act arbitrarily by exceeding in this instance the recommended amount of support. The judge stated in particular that support according to the guidelines would barely cover the wife's weekly outlays for health insurance (listed on her financial disclosure form as $18.92) and child care (calculated by the judge at $65). Using our $115.83 figure, see note 6, *supra,* that would have given the wife a mere $32 a week left over with which to support five minor children. The transcript from the hearing makes abundantly clear that the judge also considered the childrens' best interests. For example, she stressed to both parties, "It is important for the two of you to maximize the amount of money you have available for the children[,]" because, "[f]ive children are very expensive."

Moreover, as we have pointed out, the husband was relieved from paying any child care expenses. We concede that acceleration of the oldest child's thirteenth birthday may also have been unwarranted on the judge's part. That action,

however, had comparatively little effect on the total amount of support that would have been owed under the guidelines between the date of the order and the actual date, eight months hence, of the oldest child's thirteenth birthday. At the same time, the judge included in the mix additional items in the husband's favor including an order giving him the right to take tax deductions for two, instead of one, of his children and a recommendation that he not enroll in a family health insurance policy, only fifty percent of the payments for which would have been deductible from a final order for support calculated under the guidelines. See Child Support Guidelines, Part II, G(1) (1994). Because we find no abuse of discretion here, the supplementary judgment and order for support shall stand.

The husband raises one additional point which need not detain us long. During the pendancy of the divorce proceedings, and while still represented by counsel, the husband, through his attorney, moved for the appointment of a guardian ad litem, whose report was impounded by order of the court. The attorneys in the matter were each to be given a copy of the report to share with their respective clients, but under further orders prohibiting disclosure of the contents to third parties — especially the minor children. After becoming pro se, the husband moved unsuccessfully to be furnished with his own copy of the report. He now raises the claim that denial of that motion was error. We disagree.

At oral argument on the appeal, the husband conceded that his attorney had been given access to the report and had shared its contents with him and that he in turn brought to his attorney's attention certain claimed discrepancies or inaccuracies therein. The husband — a party in the matter who later acted as his own attorney — was not necessarily entitled to an actual copy of the report, particularly where he already had been told in detail of its contents. There was no error in denying the motion.

*Judgment and order for support are affirmed.*