DEPARTMENT OF REVENUE vs. CLIFFORD H. FOSS.

No. 97-P-1219.

Worcester. June 5, 1998. - September 14, 1998.

Present: JACOBS, DREBEN, & FLANNERY, JJ.

*Divorce and Separation,* Modification of judgment, Child support.

A Probate Court judge's modification of a child support order, which increased
    the father's support obligation but deviated substantially from the Mas-
    sachusetts Child Support Guidelines, was not supported by sufficient
    reasons or specific findings to have warranted a departure from the
    guidelines; the judgment of modification was vacated. [456-460]
In a proceeding for modification of a child support order, the Probate Court
    judge did not abuse his discretion in declining to make the increased sup-
    port order retroactive to the date of service of the complaint, where the
    evidence did not support the mother's claim that the father deliberately
    delayed the proceedings in order to avoid an increased support obligation
    [460], nor did the judge abuse his discretion in ordering the parties to
    alternately claim the dependent child tax exemption. [460].

COMPLAINT for divorce filed in the Worcester Division of the
Probate and Family Court Department on March 3, 1988.

A complaint for modification, filed on November 24, 1995,
was heard by *John J. Moynihan,* J.

*Michael J. Traft* for the plaintiff.

*John T. Ouderkirk, Jr.,* for the defendant.

DREBEN, J. The mother appeals from a judgment entered in
1997 on her complaint for modification of a child support order.[1]
While the judgment increased the father's support obligation, it
deviated substantially from the Massachusetts Child Support
Guidelines (guidelines). Because the judge's reasons and
specific findings are insufficient to support a departure from the
guidelines, the judgment of modification is vacated.

[1]The department filed a complaint for modification on behalf of the mother,
Susan B. Foss. See G. L. c. 119A, § 3.

Both parties filed financial statements and testified at an evidentiary hearing. We take our facts from the judge's findings, supplementing them on occasion by uncontroverted facts in the record.

The parties were married in 1981, their only child, Emily, was born in 1982, and the parties were divorced in March, 1989. The 1989 divorce judgment provided, inter alia, for joint legal custody of Emily with physical custody in the mother, and child support of $600 a month.[2] At that time, the father's gross weekly income was $709.62, and his weekly expenses were $620.15. The mother's earnings were under $200 a week. As the judge noted in his findings on the complaint for modification, the guidelines appeared not to have been followed in the original divorce judgment.

The judge briefly discussed the child's needs and the parents' respective incomes and acknowledged that the amount computed under the guidelines is, as the mother asserts, $339 a week.[3] Nevertheless, the judge ordered the father's payments increased

[2]The divorce judgment also valued the mother's interest in the parties' real estate at $50,000 and provided that the sum should be paid "upon terms as can be agreed." At the time of modification the mother was receiving $46.15 a week as settlement for this property. The judge included this amount in her weekly income. Although on appeal she objects to the inclusion of this sum in the calculation of her income, she did not raise an objection below. Accordingly, the issue of the $46.15 is not properly before us.

In the computation set forth in note 3, *infra*, prepared by the attorney acting on the mother's behalf, the $46.15 is not included.

[3]The worksheet (an exhibit at trial) shows the father's weekly gross income to be $1,094. Although this figure is not the figure set forth by the judge in his findings, he accepted the $339 figure as the amount to be paid under the guidelines. The $1,094 figure includes approximately $108 of rental income, a sum consistent with the father's testimony. The worksheet introduced at trial is as follows:

WORKSHEET CHILD SUPPORT GUIDELINES

Worksheet Completed By J. Fennell [attorney bringing mother's claims for modification]     Date Completed [Blank]

1. Basic Order

a) Non-custodial gross weekly                $1094.00
income (less prior support orders
actually paid, for child/family
other than the family seeking this
order)

b) % of gross/number of children
(from chart A)                               27      %

to only $1,000 a month ($230.76 per week). As to the child's needs, the judge found that Emily is now fourteen and her needs have increased. She participates in many activities including skiing, going to camp, to the movies, and to malls with her friends. "[Her] mother has paid all her activity expenses, gives her an allowance of $15.00 and $30.00-40.00 when she goes to a mall or visits with her father. The mother also pays for electrolysis treatments for [Emily]."

The judge's findings, taken in large part from the mother's financial statement, included the following: the mother has a gross weekly income of $436.18 which is composed of $250 wages, $139.53 child support, and $46.15 as "income from a

c) Basic order (a) x (b)                              (A)  $295.00

2. Adjustment For Ages of Children

   a) Age of oldest child                        14
   b) % of increase for age
     (from chart B)                          15      %
   c) Age add on (2b) x (A)                    $44.00
   d) Adjusted order (A) + (2c)                (B)  $339.00

3. Custodial Parent Income Adjustment

   a) Custodial parent gross income          $13,000
   b) Less $15,000.00                         -15,000.00
   c) Less day care cost (annual)            -
   d) Custodial adjusted gross               $
   e) Non-custodial gross (annual)           $
   f) Total available gross 3(d) + 3(e)       $
   g) Line 3(d) _____ Line 3(f) _____
   h) 3(d) divided by 3(f) _____ per cent
   i) Adjustment for custodial income
     (Line 3h %) x (B)                      (C)  $   0

4. Calculation of Final Order

   a) Adjusted order (B) above           (B) $339
   b) Less adjustment for income
   (C) above                             (C) -  0
   c) Less 50% of weekly cost of
   family group health insurance             -  0

   Weekly Support Order (B) - (C) - 4(c)              $339.00

property settlement." See note 2, *supra*.[4] She owns a condominium which she values at $85,000 and has a mortgage balance of $86,500. Since the divorce, she has accumulated an IRA account with a present value of $4,000. She "has a degree in early childhood education which she attained twenty (20) years ago at Fitchburg State College. Her present employment is as a substitute child care teacher. She works at three locations: Head Start, Fitchburg, MA., U. Mass Day Care and Cottage Children Center, Lake North, Worcester, MA. Her gross salary represents part time work. [She] chooses to work part time so as to be home with her teenage daughter."

As to the father, the judge found that his gross weekly income at the time of the divorce was $709.62 (net after taxes was $541.54); that his present gross weekly income from employment increased to $986.53 (net after taxes $630.18); that he owns the home he lives in which he values at $100,000 with a mortgage balance of $90,000; that he owns a timeshare in Edgartown; and that in 1995 he received $2,678 in rental income from that property "but sustained a net loss primarily due to mortgage payment of $920.00."

After making the foregoing findings, the judge found a change of circumstances consisting of the increased needs of the child and the increased gross income of the father "enabling him to meet those needs." In deciding not to apply the guidelines, the judge stated:

> "This conclusion is reached based upon a consideration of the amount of the Defendant's wage increase since the prior order, the amount of spendable income he has to meet his weekly expenses,[5] the financial needs of the child taken together with the choice of the [mother] not to maximize her income."

He then found "based upon a preponderance of the credible evidence and the inferences therefrom" that the appropriate

---

[4]The judge stated that the mother "recites weekly expenses of $586.50. . . . [but she] was unable to document her weekly expenses as she pays most of them with cash."

[5]The judge pointed out that, in addition to the standard deduction, the father had weekly deductions of $9.89 for the credit union, $10.31 toward his retirement, and $46.15 as property settlement, resulting in a net of $563.83. As noted earlier, the father's financial statement of 1989 listed weekly expenses of $620.15. His financial statements dated December, 1995, and May, 1996, showed expenses of $620.20. A statement dated December 16, 1996, showed expenses of $735.63.

amount of child support was $1,000 per month.

Before turning to the applicable legal principles which underlie any child support order, we mention some of the additional uncontroverted facts contained in the record which were not discussed by the judge. The father had a savings and investment account with his employer of $5,477, and testified that he received $550 per month rent in 1996 from an apartment in his two-family house. He also received a $4,055 tax refund for 1995, which suggests that his Federal tax withholding (as shown on his financial statement) is too high.[6]

In addition to the assets described by the judge, the mother's financial statement shows that she owns an insurance policy with a cash value of $4,150. The record does not indicate whether this is the policy required to be kept in force for the benefit of the child by the original divorce judgment.[7]

The evidence as to the mother's part-time employment is not reflected in the judge's findings. She testified that although she only works thirty hours a week, she is away from home approximately forty-two hours due to the fact that she is not paid for lunch and because her commute to and from work takes approximately one hour each day. She also attached to her complaint the 1996-1997 Department of Labor Occupational Outlook Handbook, which indicates that the median earnings of full-time child care workers in 1994 was $260 per week, or $13,520 per year. While the mother conceded that she could obtain more money if she worked full time, the judge's order of $1,000 per month would be appropriate under the guidelines formula only if the mother earned approximately $41,000 per year.[8]

Based on our examination of the record as a whole, we

---

[6]His 1995 financial statement indicated that he claimed zero exemptions for Federal and State income tax withholding.

[7]The mother was to maintain such life insurance, but the father was "to do all that is necessary to maintain [the] . . . policy presently provided by [the father's] employer."

[8]If we were to use the figures set forth in note 3, *supra*, other than the mother's income, the judge's award of child support would be justified only if the mother's annual gross income were $41,000. The calculations would be as follows:

WORKSHEET CHILD SUPPORT GUIDELINES

1. Basic Order

a) Non-custodial gross weekly                    $1094.00

conclude that the judge gave insufficient reasons for deviating from the guidelines. "[T]he Massachusetts Child Support Guidelines . . . have presumptive application in all cases seeking the modification of a child support order." *Buckley* v. *Buckley*, 42 Mass. App. Ct. 716, 723 (1997). General Laws c. 208, § 28, as inserted by St. 1993, c. 460, § 61, explicitly provides:

"In furtherance of the public policy that dependent

income (less prior support orders actually paid, for child/family other than the family seeking this order)

b) % of gross/number of children
(from chart A)                                      27____%

c) Basic order (a) x (b)                            (A) $295.00__

2. Adjustment For Ages of Children

a) Age of oldest child                              14____
b) % of increase for age
(from chart B)                                  15____%
c) Age add on (2b) x (A)                            $44.00__
d) Adjusted order (A) + (2c)                        (B) $339.00__

3. Custodial Parent Income Adjustment

a) Custodial parent gross income      $41,000__
b) Less $15,000.00                    -15,000.00
c) Less day care cost (annual)        _____
d) Custodial adjusted gross           $26,000__
e) Non-custodial gross (annual)       $56,888__
f) Total available gross 3(d) + 3(e)  $82,888__
g) Line 3(d) 26,000    Line 3(f)      $82,888__
h) 3(d) divided by 3(f) 31.37 per cent
i) Adjustment for custodial income
(Line 3h %) x (B)                 (C) $106.33__

4. Calculation of Final Order

a) Adjusted order (B) above      (B) $339____
b) Less adjustment for income
(C) above                    (C) $106.33__
c) Less 50% of weekly cost of
family group health insurance    _____

Weekly Support Order (B) - (C) - 4(c)        $232.67__

children shall be maintained as completely as possible from the resources of their parents and upon a complaint filed after a judgment of divorce, orders of maintenance and for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines promulgated by the chief justice for administration and management . . . . There shall be a rebuttable presumption that the amount of the order which would result from the application of the guidelines is the appropriate amount of child support to be ordered. If, after taking into consideration the best interests of the child, the court determines that a party has overcome such presumption, the court shall make *specific* written findings indicating the amount of the order that would result from application of the guidelines; that the guidelines amount would be unjust or inappropriate under the circumstances; the *specific* facts of the case which justify departure from the guidelines; and that such departure is consistent with the best interests of the child."[9] (Emphasis supplied.)

The judge did not refer to any specific facts which show that the guidelines are unjust or inappropriate, and only one of the reasons cited — the part-time work of the mother — bears any relation to that question. As mentioned earlier, the judge based his conclusion upon "a consideration of the amount of the [father's] wage increase since the prior order, the amount of spendable income he has to meet his weekly expenses, the financial needs of the child taken together with the choice of the [mother] not to maximize her income."

If the judge's reference to "the amount of the [father's] wage increase since the prior order" meant that he took into account the relation between the father's wage increase and the prior

[9]The statute continues: "The order shall be modified accordingly unless the inconsistency between the amount of the existing order and the amount of the order that would result from application of the guidelines is due to the fact that the amount of the existing order resulted from a rebuttal of the guidelines and that there has been no change in the circumstances which resulted in such rebuttal; provided, however, that even if the specific facts that justified departure from the guidelines upon entry of the existing order remain in effect, the order shall be modified in accordance with the guidelines unless the court finds that the guidelines amount would be unjust or inappropriate under the circumstances and that the existing order is consistent with the best interests of the child."

order, and increased that order based only on the father's increase in salary since that time, the judge was in error.[10] As G. L. c. 208, § 28, indicates, see note 9, *supra,* even if there is no change in circumstances, a modification is appropriate if the prior order did not follow the guidelines. What is significant for purposes of the guidelines is the amount of the father's present gross income.[11] See computation forms, notes 3 and 8, *supra.* Since there was no showing that the father had unusual expenses distinguishing his situation from those of other noncustodial parents, his listed expenses do not serve to rebut the guidelines. Contrast *Canning* v. *Juskalian,* 33 Mass. App. Ct. 202, 205-206 (1992), where an order was adjusted to accommodate extended long-distance visitation.

The judge referred to the needs of the child; however, he "made no determination of what the child's needs were." See *Redding* v. *Redding,* 398 Mass. 102, 109 (1986). Although the judge could properly take into account the mother's part-time work, in view of the only indication of potential earnings, namely, the Department of Labor Handbook, there was no basis for attributing $41,000 of income to her, when her gross annual income for thirty hours per week was $13,000.

Accordingly, the judgment must be vacated. Our examination of the record suggests that it is most unlikely on this record that a deviation from the guidelines is in order. Since, however, the judge has considerable discretion in these matters, see *Department of Rev.* v. *G.W.A.,* 412 Mass. 435, 441 (1992), if, within thirty days of the rescript, the father files a petition for additional findings, *and* the judge considers that, notwithstanding the presumption of G. L. c. 208, § 28, a deviation is in order, he may enter an order departing from the guidelines after such hearing, if any, as he deems advisable. If such an order is entered, the judge is to make specific findings setting forth the

---

[10]The judge pointed out that an increase in child support consistent with the guidelines would result in a monthly increase of $756. (Actually it would result in a somewhat larger figure as the judge apparently multiplied the weekly figure of $339 by four rather than multiplying the weekly figure of $339 by fifty-two weeks and then dividing that figure by twelve months.)

[11]"In establishing [the] guidelines, due consideration" was given, inter alia, "[t]o meet the child's survival needs in the first instance, but to the extent either parent enjoys a higher standard of living to entitle the child to enjoy that higher standard." Massachusetts Child Support Guidelines, introductory principles par. 4 (1994).

specific facts which justify a deviation, and the specific facts which make the particular deviation appropriate.

The mother also argues that the judge should have made the increased support order retroactive to the date of service of the complaint. A judge may in his or her discretion modify retroactively a support order "with respect to any period during which there is pending a complaint for modification." G. L. c. 119A, § 13. *Kirtz* v. *Kirtz*, 12 Mass. App. Ct. 141, 147 (1981). *Stolk* v. *Stolk*, 31 Mass. App. Ct. 903, 905 (1991). The judge found that the evidence did not support the mother's claim that the father deliberately delayed the proceedings in order to avoid an increased support obligation. There was here no abuse of discretion. Similarly, we find no abuse of discretion in the judge's order that the parties alternate taking the child as an exemption for income tax purposes. Such an order is expressly permitted by the guidelines.

The judgment of modification is vacated and a new judgment is to enter in compliance with the Massachusetts Child Support Guidelines ordering child support in the amount of $339 per week unless the judge enters a new order of deviation in accordance with this opinion.

*So ordered.*