NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-771                                          Appeals Court


P.F.  vs.  DEPARTMENT OF REVENUE.


No. 15-P-771.

Norfolk.     May 12, 2016. - December 6, 2016.

Present:  Cohen, Rubin, & Hanlon, JJ.

Divorce and Separation, Child support, Modification of judgment.
     Parent and Child, Child support.


     Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on February 22, 2004.

     A complaint for modification, filed on January 9, 2012, was
heard by John D. Casey, J.


     P.F., pro se.
     Benjamin K. Golden, Assistant Attorney General, for the
defendant.


     COHEN, J.  The plaintiff, an incarcerated father, filed a

complaint for downward modification of child support payments

ordered following his divorce from the child's mother.  A judge

of the Probate and Family Court denied the request, reasoning

that the father's loss of income was a foreseeable consequence

of his conviction of indecent assault and battery on the child

for whom he owes support.  Before us is the father's appeal.  We conclude that, on the record before us, the judge's refusal to reduce the father's child support payments in accordance with the Massachusetts Child Support Guidelines (2013) (guidelines) was outside the range of his discretion.  We therefore vacate the judgment and remand the case for further consideration.[1]

1.  Background.  The father and the mother were married in September, 2000, and had one child together, a daughter.  The marriage was short-lived.  The father and the mother divorced in April, 2004, and the father subsequently was ordered to pay weekly child support of $72.  In March, 2010, the father was convicted of indecent assault and battery on the child and was sentenced to five to seven years in State prison.[2]

In 2012, the father filed a complaint seeking modification of his child support obligation, citing his inability to pay child support while incarcerated.  On September 9, 2014, following a hearing at which the father represented himself,[3] and at which the child support enforcement division of the

---

[1] In addition, we reject the father's challenge to the judge's order of impoundment.

[2] As of May 12, 2016, when we heard oral argument, the father was housed in the Massachusetts Treatment Center, where he was undergoing evaluation for commitment as a sexually dangerous person, pursuant to G. L. c. 123A.

[3] The father appeared by videoconference.

Department of Revenue (DOR) appeared on behalf of the mother,[4] a judge of the Probate and Family Court issued a judgment denying the father's modification request, stating that "[i]t should have been a foreseeable consequence of [the father's] criminal conduct that he would be incarcerated, lose his employment and thus lose his ability to earn income to pay support."  The intended "effect of this denial [was] that [the father] [would] have to someday reimburse the [mother] for the expenses being incurred at this time."  However, the judge also requested that DOR "waive the penalties that accrue on the unpaid arrears" during the father's incarceration.

The father filed a timely notice of appeal from the judgment.  Thereafter, on December 8, 2014, the judge entered a "Supplemental Rationale" further explaining the basis for his decision on the father's complaint for modification.  This appeal followed.

2.  Discussion.  "When assessing a decision regarding a modification of child support, an appellate court 'review[s] for an abuse of discretion.'"  Wasson v. Wasson, 81 Mass. App. Ct. 574, 576 (2012), quoting from Richards v. Mason, 54 Mass. App. Ct. 568, 572 (2002).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge

_____

[4] The mother was present at the hearing, but DOR was handling collection and enforcement.  See Naranjo v. Naranjo, 63 Mass. App. Ct. 256, 259 & n.3 (2005).

made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting from Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).

"The method for calculating and modifying child support orders is governed by statute and by the guidelines." Morales v. Morales, 464 Mass. 507, 509-510 (2013).[5] See G. L. c. 208, § 28. "The Chief Justice of the Trial Court is authorized to promulgate guidelines establishing presumptive child support awards, based on articulated principles and calculated according to specified mathematical formulas." M.C. v. T.K., 463 Mass. 226, 231 (2012), citing 42 U.S.C. § 667 (2006). "Although the guidelines have been subject to periodic revision since their enactment, an essential premise has remained constant: that child support should be calculated as a percentage of parental income. . . ." Id. at 232.

There is a "rebuttable presumption that the amount of the order which would result from the application of the guidelines is the appropriate amount of child support to be ordered."

---

[5] "Under applicable provisions of Federal statutes, a State's receipt of certain Federal grants and reimbursements is conditioned on the State's creation of guidelines for child support that meet specific statutory and regulatory criteria." Morales v. Morales, supra at 513 & n.11, citing 42 U.S.C. §§ 602(a)(2), 654(20)(A), 665(a)(1)(A), 666, 667 (2006).

G. L. c. 208, § 28, as amended through St. 1998, c. 64, § 194. See guidelines, preamble. "Except as otherwise stated therein, the guidelines have presumptive application to actions to modify existing orders," Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 8 (2016) (quotation omitted), and an existing order "shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from the application of the child support guidelines" (emphasis supplied). Morales v. Morales, supra at 511, quoting from G. L. c. 208, § 28. "This presumption may be rebutted, and a judge . . . may deviate from the amount of support dictated by [the guidelines], provided the judge makes written findings specifying that 'the guidelines amount' would be unjust or inappropriate, that departure from the guidelines is justified by the facts of the case, and that departure is consistent with the child's best interests." Id. at 510 n.6.

Here, because the father had no income while he was incarcerated, the presumptive amount that followed from the application of the guidelines was the minimum order of eighty dollars per month. As the judge acknowledged, this was inconsistent with the existing child support order of seventy-two dollars per week and, therefore, "[i]n most cases this would result in a reduction of support." The judge nevertheless denied the father's modification request, concluding that (a) it

was appropriate to attribute income to the father as his loss of employment was a "foreseeable" consequence of his crime against the child, and (b) regardless of the father's income, the circumstances of the case justified an upward deviation from the presumptive amount. The father argues that neither of these rationales is valid in the circumstances and, therefore, the judge's refusal to modify his child support obligation was an abuse of discretion. For the following reasons, we conclude that the father's position has merit.

a. Attribution of income. "What is significant for purposes of the guidelines is the amount of the [payor's] present gross income." Department of Rev. v. Foss, 45 Mass. App. Ct. 452, 459 (1998). However, in certain circumstances, "[t]he earning capacity rather than the actual income of [the payor] may be considered." Flaherty v. Flaherty, 40 Mass. App. Ct. 289, 291 (1996). "Income may be attributed where a finding has been made that [the payor] is capable of working and is unemployed or underemployed," guidelines, I(E),[6] or where the payor owns "substantial assets." Wasson v. Wasson, 81 Mass. App. Ct. at 581, quoting from Flaherty v. Flaherty, supra. See

---

[6] In making such a finding, "[t]he Court shall consider all relevant factors including without limitation the education, training, health, past employment history of the party, and the availability of employment at the attributed income level. The Court shall also consider the age, number, needs and care of the children covered by this order." Guidelines, I(E).

Schuler v. Schuler, 382 Mass. 366, 374-375 (1981) (ownership of valuable assets may be considered when determining payor's ability to pay child support).

The criteria for attribution of income were not met in this case. It was undisputed that the father had no income or assets from which to pay child support, and the judge acknowledged that the father "[c]learly . . . cannot obtain employment while incarcerated." Nevertheless, the judge "attribut[ed] an income to [the] [f]ather [equal] to that of his previous job,"[7] on the basis that the father "acted voluntarily when he sexually abused his daughter," and the "loss of his employment" was a "foreseeable" consequence of his crime. In doing so, the judge cited to cases from other jurisdictions for the proposition that it is appropriate to "attribute[] income to parents who have committed sex offenses and are facing a significant reduction in income as a result of their criminal conduct." These cases are inapposite, however, as they do not involve attributing income to a presently incarcerated payor.[8] Furthermore, in

---

[7] When the original child support order entered, the father was earning $450 per week as a truck driver.

[8] See Nunley v. State Dept. of Rev., Child Support Enforcement Div., 99 P.3d 7, 13 (Alaska 2004) (attributing income to nonincarcerated payor where "substantial" evidence demonstrated that he was capable of obtaining full-time employment notwithstanding his status as a registered sex offender); Metz v. Metz, 212 N.C. App. 494, 501 (2011) (attributing income to nonincarcerated payor where his

Massachusetts, the relevant inquiry for attribution of income is not whether the payor's unemployment was "foreseeable"; it is whether the payor is presently able to obtain employment through "reasonable efforts."  See guidelines, I(E) ("If the Court makes a determination that either party is earning less than he or she could through reasonable effort, the Court should consider potential earning capacity rather than actual earnings in making its order").  See also Flaherty v. Flaherty, supra (attribution of income not appropriate where husband was laid off involuntarily).  Compare Croak v. Bergeron, 67 Mass. App. Ct. 750, 752 (2006) (appropriate to deny father's request for a reduction in child support where he "carefully orchestrated his periods of unemployment to coincide with court appearances").  As the judge recognized, a payor serving a criminal sentence cannot obtain gainful employment through "reasonable efforts" while he is incarcerated.[9]  Accordingly, it was not a proper exercise of the judge's discretion to attribute income to the incarcerated father based on his prior earning capacity.

_____

"difficulty finding employment" following his release from prison was a "clearly foreseeable" result of sexual assaulting his child; and where the evidence demonstrated that the payor had "$355,000.00 under his control, over $40,000.00 of which was in cash").

[9] The judge stated that the father "[c]learly . . . cannot obtain employment while incarcerated," and that the father is "unable to use reasonable efforts to obtain employment due to his incarceration."

b.  Deviation from guidelines.  "Although a purpose of the
guidelines is to encourage joint parental responsibility for
child support in proportion to, or as a percentage of, income
. . . a judge is to consider the totality of the parties'
circumstances in determining their support obligations."  Croak
v. Bergeron, 67 Mass. App. Ct. at 754-755 (quotations omitted).
To that end, a judge may "deviate" from the guidelines upon

> "enter[ing] specific written findings stating:  1) the
> amount of the order that would result from application of
> the guidelines; 2) that the guidelines amount would be
> unjust or inappropriate under the circumstances; 3) the
> specific facts of the case which justify departure from the
> guidelines; and 4) that such departure is consistent with
> the best interests of the child."

Guidelines, IV.  See G. L. c. 208, § 28.

While, as we discuss below, the judge also mentioned two
other considerations, it is apparent that his decision hinged on
the fact that the father was incarcerated for sexually abusing
the child for whom he owes support.[10]  However, this central
justification finds no support in the guidelines.  The
guidelines identify thirteen specific circumstances that a judge
may consider when determining whether deviation is appropriate.

---

[10] This is underscored by a sentence in the judgment,
stating that "[t]he [c]ourt is willing to reconsider this
decision if [the] [f]ather is able to have his conviction
overturned and he is subsequently found to be [n]ot [g]uilty."
This was in keeping with what the judge had explained at the
hearing -- that if the conviction were overturned, the father
would "have the right to come back to court and at that point
seek retroactive relief."

See guidelines, IV.[11]  Although the list is not exhaustive, there is nothing in the guidelines to suggest that the judge may consider the nature of an incarcerated payor's crime as a factor warranting upward deviation.  In fact, the guidelines specifically allow for a downward deviation from the presumptive amount when the "[p]ayor is incarcerated, is likely to remain so for an additional 3 years and has insufficient financial resources to pay support."  Guidelines, IV.[12]

---

[11] "Circumstances which may support deviation, above or below the [guidelines,] include, but are not limited to, the following:  1) the parties agree and the Court approves their agreement; 2) a child has special needs or aptitudes; 3) a child has extraordinary medical or other expenses; 4) application of the guidelines, particularly in low income cases, leaves a party without the ability to self support; 5) Payor is incarcerated, is likely to remain incarcerated for an additional 3 years and has insufficient financial resources to pay support; 6) application of the guidelines would result in a gross disparity in the standard of living between the two households such that one household is left with an unreasonably low percentage of the combined available income; 7) a parent has extraordinary medical expenses; 8) a parent has extraordinary travel or other expenses related to parenting; 9) application of the guidelines may adversely impact re-unification of a parent and child where the child has been temporarily removed from the household based upon allegations of neglect; 10) absent deviation, application of the guidelines would lead to an order that is unjust, inappropriate or not in the best interests of the child, considering the Principles of these guidelines; 11) a parent has extraordinary health insurance expenses; 12) one parent is absorbing a child care cost that is disproportionate in relation to their income; 13) one parent provides less than one-third of the parenting time for a child or children."  Guidelines, IV.

[12] We infer that the likely intent of this provision is to prevent incarcerated parents from accumulating arrears that will impede their reentry into society and make it more difficult to support themselves and provide for their children in the future.

The judge's decision to make an upward departure from the guidelines therefore "was based at least partially upon [an] impermissible factor[]."  Leonardo v. Leonardo, 40 Mass. App. Ct. 572, 576 (1996) (factor is impermissible if neither expressly nor impliedly permitted in the guidelines).  See Boulter-Hedley v. Boulter, 429 Mass. 808, 811 (1999) ("[W]e cannot read into a statute a provision which simply is not there").  In addition, we find it problematic to draw a distinction based on the nature of the parent's crime, since virtually any crime leading to incarceration could be considered injurious to the child, to the extent that it disrupts the family unit and disadvantages the child both emotionally and economically.  In essence, the judge made a policy determination that is not reflected in the guidelines and is appropriately left to those responsible for their promulgation.

Nevertheless, DOR argues that the judge, who is vested with general equity jurisdiction under G. L. c. 215, § 6, was permitted to consider the nature of the father's crime as an equitable factor weighing against a reduction in child support.  Specifically, DOR contends that the judge properly denied the father's request for modification, as a person "who comes into equity must come with clean hands," and "it can be said, as matter of law," that a person "convicted of a crime related to the controversy in issue . . . has unclean hands."  Fidelity

Mgmt. & Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 200 (1996) (quotation omitted).

In this case, however, the father did not "come into equity," ibid.; rather, the relief that he sought in his complaint for modification was statutory in nature, see Department of Rev. v. Mason M., 439 Mass. 665, 674 (2003) ("A judge's authority to modify a support order is statutory"); Vaida v. Vaida, 86 Mass. App. Ct. 601, 606 (2014) ("The statutory system governing child support in Massachusetts is a complete system, and there is no nonstatutory right to relief under the common law"). While a judge may, "in certain circumstances, . . . award child support under [the court's] broad equity powers," Santagate v. Tower, 64 Mass. App. Ct. 324, 328 (2005), the judge here appeared to be using child support as a means to provide compensation for injuries (both psychological and financial) caused by the father's abuse.[13] This was not appropriate. It is well-settled that "[a]n equitable remedy . . . is not available to a party with an adequate remedy at law." Id. at 329. Here, the child and the mother have remedies at law: they may seek damages in tort for injuries caused to

---

[13] The judge found that the father should not be allowed to "benefit" from his "heinous actions," and to the extent that the "child will need therapy and other services . . . to cope" with the father's abuse, "[f]orcing [the] [m]other to bear th[at] financial burden alone, a burden caused solely by [the] [f]ather's actions, runs afoul of the purpose of this court of equity."

them by the father's sexual abuse of the child.[14]  Accordingly,

DOR's argument is unpersuasive.

We also are unconvinced by two additional reasons cited by

the judge in support of his decision to deviate from the

guidelines:  disparity in parenting time, and special needs and

expenses.  As to the first, the judge specifically found that

"[r]educing [the] [f]ather's child support obligation would be

unjust" because he "spends no parenting time with his daughter."

However, while the guidelines do permit upward deviation where

the payor provides "less than one-third of the parenting time

for a child," guidelines, IV,[15] this provision reasonably must be

understood to apply only to nonincarcerated parents; otherwise,

it would operate as an exception that swallows the rule, as it

would automatically apply to all incarcerated parents -- even

those who are eligible for a downward deviation due to the

length of their incarceration.  See guidelines, IV.  Thus, the

fact that the incarcerated father provides less than one-third

_____

[14] In this regard, the child has the benefit of a special,
long statute of limitations.  See G. L. c. 260, § 4C.

[15] "These guidelines are based upon the child(ren) having a
primary residence with one parent and spending approximately
one-third of the time with the other parent.  If parenting time
is less than one-third for the parent who is not the residential
parent, the Court may consider an upward adjustment to the
amount provided under the child support guidelines."
Guidelines, II(D).

of the parenting time does not overcome the presumptive application of the guidelines in this case.

As to the second, the judge stated that the child will likely require "therapy and other services," which the "[m]other will have to provide . . . at a significant cost."  To be sure, the guidelines do allow upward deviation where a "child has special needs," or "extraordinary medical or other expenses."  Guidelines, IV.  However, as the judge acknowledged, "no evidence was presented . . . on this issue."  In the absence of evidence regarding the child's specific needs and the nature and extent of any expenses that the mother stands to incur as a result, it cannot be concluded that the amount of support ordered by the judge is appropriate to meet the child's needs.  See Department of Rev. v. Foss, 45 Mass. App. Ct. at 459 (deviation not appropriate where "[t]he judge referred to the needs of the child," but "made no determination of what the child's needs were").  See also Martin v. Martin, 70 Mass. App. Ct. 547, 551 (2007) (deviation improper where "record disclose[d] no extraordinary expenses that would rebut the presumption in the guidelines").

In sum, "[b]ased on our examination of the record as a whole, we conclude that the judge gave insufficient reasons for

deviating from the guidelines" in this case. Department of Rev. v. Foss, supra at 456-457.[16]

3. Scope of remand. Because the judge should not have attributed income to the incarcerated father, and had insufficient grounds, on this record, for upward deviation from the guidelines, we vacate the judgment and remand the case for reconsideration of the father's request for modification. The judge may take additional evidence. Among the issues that will need to be addressed on remand are the father's current incarceration status and the extent to which any modification should be retroactive, consistent with G. L. c. 119A, § 13(a). The judge also should take into account any other support obligations that the father may have, as required by the guidelines and G. L. c. 208, § 28.[17] See Richards v. Mason, 54

---

[16] We do not consider the father's additional argument concerning the propriety and scope of the impoundment order entered on November 10, 2014. The argument is not properly raised in this appeal, nor is the record adequate to address it. In any event, we note that it is hardly uncommon for files to be impounded in cases involving sexual abuse of minors. See, e.g., Commonwealth v. George W. Prescott Publishing Co., 463 Mass. 258, 265 n.10 (2012) ("[N]umerous statutes preclude disclosure or publication of a sexual assault victim's name or other identifying information, whether contained in police or court records"). The father's apparent concerns were without foundation. Impoundment did not prevent him from obtaining access to the court record, nor did it impede this court's ability to review the case.

[17] "When a court makes an order for maintenance or support, the court shall determine whether the obligor under such order is responsible for the maintenance or support of any other

Mass. App. Ct. at 574 (father's support payments for child of another relationship should be deducted from his gross income before applying guidelines).

4. <u>Conclusion</u>.  The judgment dated September 9, 2014, denying the father's complaint for modification is vacated, and the matter is remanded for further proceedings consistent with this opinion.  The impoundment order dated November 10, 2014, is affirmed.

<u>So ordered</u>.

---

children of the obligor, even if a court order for such maintenance or support does not exist . . . . If the court determines that such responsibility does, in fact, exist and that such obligor is fulfilling such responsibility such court shall take into consideration such responsibility in setting the amount to [be] paid under the current order for maintenance or support."  G. L. c. 208, § 28, as amended through St. 1993, c. 460, § 62.  At the modification hearing, the father testified that he had three other children from a prior relationship.