NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-443                                              Appeals Court

ELIZABETH EMERY vs. THOMAS K. STURTEVANT.

No. 16-P-443.

Franklin.    December 2, 2016. - May 12, 2017.

Present: Vuono, Wolohojian, & Shin, JJ.


Divorce and Separation, Modification of judgment, Child support, Alimony, Findings. Parent and Child, Child support. Evidence, Earning capacity. Contempt.


Complaint for divorce filed in the Franklin Division of the Probate and Family Court Department on November 12, 2010.

Following review by this court, 88 Mass. App. Ct. 1118 (2015), complaints for modification, filed on July 24, 2012, were considered by Stephen M. Rainaud, J., and a complaint for contempt, filed on January 24, 2014, was considered by Beth A. Crawford, J.


David H. Lee (Jessica M. Dubin also present) for the husband.
Edward F. Dombroski, Jr. (Laura S. Davis also present) for the wife.


VUONO, J. This case, which comes before us a second time, arises from the complaints filed by the former husband (husband) for modification of alimony and child support payments and from

a series of complaints for contempt filed by the former wife (wife).  The question we must answer is whether it is appropriate to attribute income to the husband, for purposes of determining his alimony and child support obligations, where he resigned from a high-paying position as head of school at a private institution and accepted a substantially lower-paying position in the same field following an extensive job search. We conclude that, under such circumstances, the criteria for attribution of income have not been met.  We therefore remand this case for a determination of the husband's support obligations based on his "present income."  Flaherty v. Flaherty, 40 Mass. App. Ct. 289, 291 (1996).

Background.  A full recitation of the facts is necessary for our discussion.[1]  The parties were divorced on June 18, 2012, following twenty years of marriage.  During the marriage, the wife was the primary caregiver for the parties' three children, while the husband worked in the private education sector, making "considerable professional advancements over the years."  On July 1, 2003, the husband began working as associate head of school at Northfield Mount Hermon School (NMH), located in Gill,

_____

[1] We summarize the uncontested findings of fact entered in support of the judgments challenged on appeal, and "[w]here necessary to provide context or meaning, we have supplemented our summary" with competent evidence in the record appendix and excerpts from this court's decision in the related case of Emery v. Sturtevant, 88 Mass. App. Ct. 1118 (2015).  M.C. v. T.K., 463 Mass. 226, 229 n.2 (2012).

earning a starting annual salary of $128,500. He was promoted to head of school in less than one year, and by all accounts, he was extremely successful and effective in the performance of his job duties. By 2010, the husband's base salary had increased to $350,000. In addition to his base salary, the husband received numerous benefits from NMH, including, but not limited to, annual bonuses, deferred compensation, "free housing in an eight-bedroom, five-bathroom, three-story mansion, with all maintenance, cleaning and upkeep provided by the school," free meals through the school's dining service, use of a vehicle, and generous private school tuition waivers for the parties' children. In 2010, the value of the husband's total compensation package from NMH exceeded $450,000.

The husband's position as head of school was governed by a series of three-year employment contracts; each contract was subject to extension at the discretion of NMH's board of trustees. The husband's initial contract guaranteed his employment through June 30, 2007. His contract was thereafter extended twice, ultimately guaranteeing his employment through June 30, 2012.

In 2010, the husband was involved in discussions with Mark Chardack, the chairman of NMH's board of trustees, to extend his employment contract once again. To that end, in December, 2010, Chardack sent a letter to the husband memorializing their

"mutual intention . . . to enter into a formal employment agreement before the end of the current School year" extending the husband's "employment as Head of School through June 30, 2015." As it turned out, however, the husband was never presented with a new contract.

In April, 2011, the husband informed Chardack that he had engaged in an extramarital affair with a subordinate, which had ended in November, 2010. In the following weeks, the husband and Chardack spoke several times. The content of those discussions was not disclosed at trial. On May 3, 2011, the husband sent a letter to Chardack announcing that he was resigning from NMH due to "personal reasons." Chardack responded with a letter, dated the same day, indicating that he accepted the husband's resignation "with deep sadness." The husband stopped working at NMH immediately, although the school year had not yet ended and his employment did not officially terminate until June 30, 2011.[2] In connection with his departure from NMH, the husband received a severance package which continued his base salary of $350,000 for one year (through June 30, 2012), along with some additional benefits. The husband began looking for a new full-time position in June, 2011, supplementing his severance package with proceeds from temporary consulting work.

---

[2] The school year ended in late May.

The divorce proceedings.  By the time of the husband's departure from NMH, the parties had already separated and the wife had initiated divorce proceedings in the Probate and Family Court.  A two-day trial was held before a judge (divorce judge) in May, 2012, at which the wife was represented by counsel and the husband represented himself.  The divorce judge issued a judgment of divorce nisi dated June 18, 2012, as amended on July 17, 2012, ordering the husband to pay weekly child support of $780 and weekly general term alimony of $2,481 to the wife.  The judge calculated the support payments using the husband's reported gross weekly income of $10,436.58.[3]

The husband's complaints for modification.  On May 30, 2012, after the conclusion of the divorce trial but before the entry of judgment, the husband was offered a position as head of school at the SEED School of Cincinnati, Ohio (SEED), at a starting annual salary of $135,000.  On July 24, 2012, the husband filed two separate complaints for modification seeking a reduction in his child support and alimony obligations on the basis that his new income was substantially lower than his income at the time of the divorce.  Following a trial, which was held before the divorce judge, the complaints were dismissed.

---

[3] The judge relied on the gross weekly income figure reported on the husband's financial statement filed at the start of the divorce trial.  That figure included $3,705.81 derived from the husband's temporary consulting work, and $6,730.77 from the husband's severance pay from NMH.

In his memorandum and order dated October 24, 2013, the divorce judge concluded, without making subsidiary findings, that no material change in circumstances had occurred because the husband's "actual earnings [from SEED] are less than his potential and demonstrated earning capacity," and the reduction in the husband's income was caused by "his voluntary decision to resign from NMH." The husband appealed from the dismissal of his complaints for modification.

The wife's complaints for contempt. In addition to the modification proceedings initiated by the husband, the parties were involved in numerous contempt proceedings brought by the wife. Between September, 2012, and January, 2014, the wife filed three separate complaints for contempt alleging that the husband had fallen behind in his child support and alimony payments.[4] The first two complaints were adjudicated by the divorce judge, who found the husband to be in contempt and

---

[4] On September 11, 2012, the wife filed a complaint for contempt alleging that the husband was behind on his child support and alimony payments. On November 14, 2012, the divorce judge issued an amended judgment of civil contempt, finding the husband in contempt and establishing his combined child support and alimony arrearages at $10,248 as of September 27, 2012. The wife filed a second complaint for contempt in November, 2012. On February 14, 2013, the divorce judge issued a judgment of civil contempt and established the husband's total arrearages at $51,085 as of January 18, 2013. On March 27, 2013, the divorce judge issued a further judgment of civil contempt, establishing the husband's total arrearage at $54,346. Finally, on October 24, 2013, the divorce judge issued a further judgment of civil contempt establishing the husband's total arrearage at $90,710.91 as of October 11, 2013.

established the husband's total arrearage at $90,710.91 as of October 11, 2013. The wife's third complaint for contempt, filed on January 24, 2014, was adjudicated by a different judge of the Probate and Family Court (contempt judge). On April 18, 2014, the contempt judge issued a judgment establishing the husband's alimony arrearage at $113,924.13 as of March 20, 2014 (the husband was current with his child support payments at that point), while declining to find the husband in contempt due to his inability to pay. Specifically, the contempt judge found that the husband's expenses exceeded his net income by $102 per week and that he did not have any liquid assets available to satisfy his alimony arrearage. The husband also appealed from the April 18, 2014, judgment.

The first appeal and remand. The husband's appeals were consolidated and came before a different panel of this court. In an unpublished memorandum and order issued pursuant to our rule 1:28, the panel remanded the case, holding that the divorce judge's failure to make adequate findings to support his conclusion that the husband's reduction in salary was voluntary and the absence of findings with regard to the reasonableness of the husband's job search prevented an assessment of the validity of the judge's ruling regarding the attribution of income.[5]

---

[5] The panel further noted that it was unable to "discern whether the judge credited any of the ample evidence presented

Given the lack of subsidiary findings to support the divorce judge's attribution of income, the panel was also unable to determine whether "it was within the [contempt] judge's discretion to allow arrears to continue accruing after the complaints for modification were filed."  Accordingly, the panel vacated all three judgments and, as we have noted, remanded the case for further proceedings consistent with its decision.

Shortly thereafter, on January 18, 2016, without taking additional evidence,[6] the divorce judge issued a "Judgment After Remand" setting forth findings of fact in support of his decision to dismiss the husband's complaints for modification. One month later, on February 16, 2016, also without further hearing, the contempt judge issued a "Judgment on Complaint for Contempt (After Remand)," again declining to find the husband in contempt in light of his inability to pay, while omitting a specific arrearage amount in the judgment.  The present appeal followed.

Discussion.  The husband challenges (1) the dismissal of his complaints for modification on the ground that the attribution of income based on his prior earning capacity was

_____

by the husband at trial of the extent of his job search following his resignation from NMH," or whether "the amount of the attribution was appropriate."

[6] The panel acknowledged that "[w]hether there should be additional evidence taken in this case is a matter within the judge's discretion."

improper, and (2) the contempt judge's failure to eliminate the husband's alimony arrearages and ongoing alimony payments in light of her finding regarding the husband's inability to pay. We address each claim in turn.

1. Modification. We review a judge's denial of a party's request for modification of alimony and child support for an abuse of discretion. See Pierce v. Pierce, 455 Mass. 286, 293 (2009); Wasson v. Wasson, 81 Mass. App. Ct. 574, 576 (2012). A party seeking to modify an existing alimony award "must demonstrate a material change of circumstances since the entry of the earlier judgment." Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 772 (2014), quoting from Schuler v. Schuler, 382 Mass. 366, 368 (1981). See G. L. c. 208, § 49(e).[7] "Because alimony is a creature of statute," Vedensky v. Vedensky, supra at 776 n.11, actions to establish or modify alimony are governed by the Alimony Reform Act (Act), G. L. c. 208, §§ 48-55. The Act requires a judge to consider several factors when setting or modifying an alimony award, including, but not limited to, the "income, employment and employability of both parties," and the

---

[7] "[G]eneral term alimony may be modified in duration or amount upon a material change of circumstances warranting modification." G. L. c. 208, § 49(e), inserted by St. 2011, c. 124, § 3. "General term alimony" is defined as "the periodic payment of support to a recipient spouse who is economically dependent." G. L. c. 208, § 48, inserted by St. 2011, c. 124, § 3.

"ability of each party to maintain the marital lifestyle."
G. L. c. 208, § 53(a), inserted by St. 2011, c. 124, § 3.[8]
Moreover, the Act generally limits the amount of an alimony
award to "the recipient's need or 30 to 35 per cent of the
difference between the parties' gross incomes."  G. L. c. 208,
§ 53(b).

In contrast to alimony, "[t]he method for calculating and
modifying child support" is governed both by statute, see G. L.
c. 208, § 28, and by the Massachusetts Child Support Guidelines
(2013) (guidelines).  Morales v. Morales, 464 Mass. 507, 509-510
(2013).  "Although the guidelines have been subject to periodic
revision since their enactment, an essential premise has
remained constant: that child support should be calculated as a

---

[8] When determining the appropriate duration and amount of
alimony:

> "[A] court shall consider: the length of the marriage;
> age of the parties; health of the parties; income,
> employment and employability of both parties, including
> employability through reasonable diligence and additional
> training, if necessary; economic and non-economic
> contribution of both parties to the marriage; marital
> lifestyle; ability of each party to maintain the marital
> lifestyle; lost economic opportunity as a result of the
> marriage; and such other factors as the court considers
> relevant and material."

G. L. c. 208, § 53(a).  "A court must consider these same
factors in determining whether the amount of alimony should be
modified based on a change of circumstances following entry of
an earlier judgment for alimony."  Pierce v. Pierce, 455 Mass.
at 295 (discussing alimony factors set forth in G. L. c. 208,
§ 34, prior to enactment of Act).

percentage of parental income."  P.F. v. Department of Rev., 90 Mass. App. Ct. 707, 709 (2016), quoting from M.C. v. T.K., 463 Mass. 226, 232 (2012).  The guidelines permit a judge to modify a child support order if "there is an inconsistency between the amount of the existing order and the amount that would result from the application of the child support guidelines" (inconsistency standard), or if "any other material and substantial change in circumstances has occurred" (material change in circumstances standard).  Guidelines § III-A.

While the precise methods for calculating and modifying child support and alimony differ somewhat, both depend in large part on the parties' financial circumstances.  Accordingly, the central inquiry in a case involving modification of both child support and alimony is whether, and to what extent, the parties' financial circumstances have changed since the entry of the prior judgment.  "The change may be in the needs or the resources of the parties . . . or in their respective incomes." Kernan v. Morse, 69 Mass. App. Ct. 378, 383 (2007), quoting from Fugere v. Fugere, 24 Mass. App. Ct. 758, 760 (1987).[9]

---

[9] We note that the criteria for determining a party's income is the same for purposes of both alimony and child support.  See G. L. c. 208, § 53(b) (for purposes of calculating alimony "income shall be defined as set forth in the Massachusetts child support guidelines").

Here, the husband sought a downward modification of his alimony and child support payments on the basis that his income from SEED was substantially lower than his income at the time of the divorce.  However, the divorce judge concluded that the husband was not entitled to modification because his decision to resign from NMH, and the resulting reduction in his income, was "voluntary."  The judge found that because the husband "was earning less at the time of the [modification] trial . . . than prior to the divorce by his own choosing," it was appropriate to attribute income to the husband consistent with his prior NMH salary.  The husband claims that the judge's attribution of income to him was error.  We agree.

At the outset, we note that "attribution of income in the alimony context is not different in rationale from that in the child support context."  C.D.L. v. M.M.L., 72 Mass. App. Ct. 146, 153 n.5 (2008).  Accordingly, the discussion that follows applies to both alimony and child support.[10]

"In the proper circumstances, '[a] judge is not limited to a party's actual earnings but may . . . consider potential earning capacity' when attributing income."  Id. at 152, quoting from Heins v. Ledis, 422 Mass. 477, 485 (1996).  However, before doing so, the judge must make a determination that a party is

_____

[10] Both the Act and the guidelines permit a judge to attribute income to a party who "is unemployed or underemployed."  See G. L. c. 208, § 53(f); Guidelines § I-E.

capable of earning more with reasonable effort.  See Flaherty v. Flaherty, 40 Mass. App. Ct. at 291.  Indeed, "the Child Support Guidelines and the case law specifically provide that an attribution tied to earning capacity is to be based on whether a party has exercised reasonable efforts in seeking employment." Ulin v. Polansky, 83 Mass. App. Ct. 303, 307 (2013).  See Guidelines § I-E ("If the Court makes a determination that either party is earning less than he or she could through reasonable effort, the Court should consider potential earning capacity rather than actual earnings in making its order").

When determining the earning capacity of a party who has recently undergone a career change, we have said that "[a]ttribution of income may be appropriate when a judge determines a career change is voluntary."  Flaherty v. Flaherty, supra.  In such voluntary career change cases, attribution based on a party's prior earning capacity has been permitted when that party has voluntarily left his or her job and has thereafter failed to make reasonable efforts to secure comparable employment.  This may occur when a party has taken an early retirement, or has chosen to pursue work in a totally unrelated field at a substantially reduced salary, despite the availability of higher-paying jobs commensurate with that party's education, training, and experience.  See, e.g., Schuler v. Schuler, 382 Mass. at 372 (affirming attribution of income to

husband who, after being terminated from job, chose "to wait indefinitely upon the limited prospect of becoming president of a corporation" instead of taking readily available position as engineer); Canning v. Juskalian, 33 Mass. App. Ct. 202, 209-211 (1992) (affirming attribution of income to wife who resigned from job to stay at home with child from subsequent marriage); Bassette v. Bartolucci, 38 Mass. App. Ct. 732, 735-736 (1995) (affirming attribution where husband voluntarily retired from his job as letter carrier earning $735 per week to work as missionary with pension income of $235 per week); C.D.L. v. M.M.L., 72 Mass. App. Ct. at 152, 158 (affirming attribution of income to husband who, after resigning as partner in large law firm, "made minimal attempts to obtain employment" and "only applied for jobs in areas for which he had little or no experience").[11]

Here, it is apparent that the judge viewed this as a voluntary career change case. As we have noted, the judge "[found] it appropriate to attribute to [the husband] his NMH salary in light of his voluntary resignation from his position

---

[11] Compare Ulin v. Polansky, supra (reversing attribution of income where there was evidence that wife was "sincere in her job search" after resigning from previous job, yet judge failed to make specific finding whether wife had exercised reasonable efforts to obtain employment); Flaherty v. Flaherty, supra (reversing attribution of income to husband who was recently "laid off from his job" and "was readying himself to seek new employment").

as Head of School at NMH."[12]  This was error.  The facts of this case are distinguishable from the voluntary career change line of cases.  The husband did not take an early retirement, nor did he resign from NMH to pursue a less lucrative career in a completely unrelated field.  Moreover, while the judge found that "[t]he [h]usband's position at NMH remained available to him, but for his resignation," there was no evidence

---

[12] The husband contends that the judge's finding regarding the voluntariness of his resignation from NMH was clearly erroneous.  However, the judge's finding was based largely on his assessment of the husband's credibility at trial -- a finding that "[w]e will not reverse . . . unless we are convinced [it is] plainly wrong."  Zaleski v. Zaleski, 469 Mass. 230, 237 (2014), quoting from Felton v. Felton, 383 Mass. 232, 239 (1981).  The judge found that "[a]lthough the [h]usband testified that he resigned to 'smooth the waters' at NMH after revelation of an extramarital affair, there was absolutely no evidence presented at trial that the [h]usband was forced or requested to resign as Head of School at NMH."  The judge declined to "credit the [h]usband's testimony that he had no expectation that his contract would be extended after June, 2012."  While "[i]t is settled that mere disbelief of testimony does not constitute evidence to the contrary," Kunkel v. Alger, 10 Mass. App. Ct. 76, 86 (1980), we cannot say that the judge was plainly wrong in concluding that the husband failed to present credible evidence that he was forced to resign.  This is especially true where, as here, the husband's own testimony regarding the circumstances of his resignation was somewhat vague and contradictory.  The husband testified that he was unable to discuss the terms of his resignation due to a confidentiality agreement, and that he did not initially believe that disclosing the affair to Chardack would cost him his job.  While we decline to disturb the judge's finding as to the voluntariness of the husband's resignation from NMH, we note that it is not dispositive of the attribution issue.

demonstrating that the husband's employment with NMH would continue indefinitely.[13]

Regardless of the circumstances surrounding the husband's resignation from NMH, the judge was still required to consider whether, at the time of the modification trial, the husband could earn more with reasonable effort. See P.F. v. Department of Rev., 90 Mass. App. Ct. at 711 ("[I]n Massachusetts, the relevant inquiry for attribution of income is not whether the payor's unemployment was 'foreseeable'; it is whether the payor is presently able to obtain employment through 'reasonable efforts'"). The reasonable efforts inquiry is critical, and is generally the determining factor in whether to affirm the attribution of income to a party based on his prior earning capacity. See, e.g., C.D.L. v. M.M.L., 72 Mass. App. Ct. at 157 (in affirming attribution of income to husband, court gave "special weight to the judge's finding that the husband was 'earning less than he could with reasonable efforts'"). Indeed, as we have previously observed, "neither this court nor the Supreme Judicial Court has affirmed an attribution of income

_____

[13] While there was some evidence (namely, Chardack's December, 2010, letter of intent) indicating the potential for a contract extension through June, 2015, there is nothing in the record indicating that the husband's employment would be extended beyond that date. Indeed, the husband's predecessor served as head of school for six years, and the head of school prior to that served for eight years. By the time of his resignation in May, 2011, the husband had already served as head of school for seven years.

made without a finding concerning the party's reasonable efforts to secure employment." Ulin v. Polansky, 83 Mass. App. Ct. at 307.[14]

In making such a finding, the judge must "consider all relevant factors including without limitation the education, training, . . . past employment history of the party, and the availability of employment at the attributed income level." Guidelines § I-E.  See Flaherty v. Flaherty, 40 Mass. App. Ct. at 291 ("judge should determine by specific and detailed findings of fact whether an individual will be able to earn additional income with reasonable effort before attributing income").  Here, the judge found that the husband is "highly employable," having "advanced steadily in his career in academia throughout the parties' marriage."  However, the judge did not make a specific finding regarding the reasonableness of the

_____

[14] In Ulin v. Polansky, a case with facts similar to those of the present case, the wife voluntarily resigned from her job because she "believ[ed] that she could not reasonably meet" sales goals imposed by her new supervisor.  83 Mass. App. Ct. at 304.  The trial judge found that while the wife's resignation was voluntary, "she had no other decision but to do so given the proposal with which she was faced."  Id. at 305.  The wife maintained that she was actively looking for work but had not been able to secure a new job.  Id. at 304.  However, the judge found that the wife was "presently able to obtain employment," and attributed an annual income to her of $120,000.  Id. at 305. This court ultimately reversed and remanded, concluding that the "attribution rest[ed] on insufficient factual findings" because, notwithstanding the wife's voluntary resignation, the judge failed to make a specific finding as to "whether [the wife] had exercised reasonable efforts in her job search."  Id. at 306-307.

husband's efforts to secure employment.  Instead, the judge simply "credit[ed] the [h]usband's testimony about his job search efforts after his resignation from NMH."  The testimony credited by the judge details the husband's extensive job search spanning eleven months (from June, 2011, to May, 2012) during which the husband (1) applied for dozens of positions in the private education sector, the majority of which were head of school or similar positions; (2) traveled frequently, often several times per month (including to Boston, New York, Connecticut, California, and China), to attend numerous interviews, meetings, and job fairs; (3) worked with several recruiters and job search agencies; (4) reached out continuously to his contacts in the education field regarding potential job openings; and (5) worked on developing skills in educational technology to further enhance his marketability.  These efforts to secure a permanent position resulted in a single job offer, the head of school position at SEED, which the husband accepted.

Rather than assessing the reasonableness of the husband's job search leading up to his acceptance of the SEED position, the judge instead found that "once the [h]usband obtained his position with the SEED Foundation in May, 2012, he ceased making any efforts to find employment that paid a salary commensurate with that he had made at NMH."  It is neither reasonable nor fair to expect the husband, after he has engaged in an extensive

job search in his field of expertise and has secured employment commensurate with his training and experience, to continue his job search efforts indefinitely to avoid the risk of income attribution.  Compare Schuler v. Schuler, 382 Mass. at 371-372; C.D.L. v. M.M.L., 72 Mass. App. Ct. at 150, 158.  Accordingly, not only did the judge fail to make a specific finding that the husband could earn more with reasonable effort, it is apparent that such a finding cannot be made on this record.[15]

In light of the foregoing, we conclude that "[t]he criteria for attribution of income were not met in this case."  P.F. v. Department of Rev., 90 Mass. App. Ct. 707, 710 (2016).  See Ulin v. Polansky, 83 Mass. App. Ct. at 307 ("without a specific finding" that party has failed to exercise reasonable efforts to obtain employment, "attribution tied to an earning capacity . . . . rests on insufficient factual findings").  As such, the husband's support obligations must be based on his present

---

[15] It is worth noting that while the judge failed to give appropriate attention to the required "reasonable efforts" inquiry, he appeared to consider an impermissible factor -- the husband's conduct -- when deciding to attribute income to him. The judge specifically found that "[t]he [h]usband's resignation from his position as Head of School was voluntary and was the result of his affair with a subordinate.  The [h]usband's willful and deceptive behavior resulted in the resignation. . . .  As a result of the [h]usband's resignation, the [w]ife lost her housing, access to unlimited meals at no charge, use of a vehicle, subsidized vacations and numerous other benefits." "[W]e caution against the view that . . . alimony . . . may be justified purely on the basis of the blameworthy conduct of one of the spouses."  Putnam v. Putnam, 5 Mass. App. Ct. 10, 15 (1977).

income. Flaherty v. Flaherty, 40 Mass. App. Ct. at 291. We therefore vacate the dismissal of the husband's complaints for modification and remand for a redetermination of the husband's support obligations consistent with his actual, rather than attributed, income.

2. Contempt. The husband argues that the contempt judge abused her discretion by failing to modify the husband's alimony arrearages and ongoing alimony payments once she determined that the husband lacked the ability to pay. "A Probate Court has power to modify a support order in the context of either a complaint for contempt or a complaint for modification. . . . This power may be exercised not only as to future obligations, but also as to arrearages." Kennedy v. Kennedy, 17 Mass. App. Ct. 308, 312 (1983), and cases cited. But see G. L. c. 119A, § 13(a) (child support arrearages are only subject to retroactive modification during period in which complaint for modification is pending). Here, we need not reach the issue of whether the contempt judge properly exercised her discretion in declining to modify (both retroactively and prospectively) the husband's alimony payments, because we have already concluded that the divorce judge abused his discretion in declining to grant the husband's request for a downward modification of his support obligations.

Conclusion. The judgment after remand dated January 18, 2016, is vacated, and the matter is remanded for the limited purpose of recalculating the husband's child support and alimony obligations based on the husband's actual income at the time of the modification trial.[16] The modification of the husband's alimony and child support obligations shall be effective as of the date of the original judgments of dismissal entered on October 24, 2013.

The judgment on complaint for contempt (after remand) dated February 16, 2016, is vacated, and the matter is remanded for recalculation of the husband's alimony arrearages, if any, following the modification of his support obligations on remand.[17]

So ordered.

---

[16] On remand, the judge may consider, in addition to the husband's salary, any "perquisites or in-kind compensation to the extent that they represent a regular source of income" to the husband. Guidelines § I-A-20.

[17] The wife's request for appellate attorney's fees and costs is denied.